**CRAZY WATER CO., Inc.**

v.

**BAPTIST FOUNDATION OF TEXAS.**

No. 14759.

Court of Civil Appeals of Texas.

Dallas.

April 16, 1954.

Rehearing Denied May 28, 1954.

mineral rights acquired by" the Foundation from the Crazy Water Company, known as the Thorndale Crystal properties; plus (2) the Crazy Water Crystal business at Mineral Wells and Thorndale, Texas, including all machinery, office and other equipment, the trade-mark "Crazy" as applied to mineral water and mineral water products known as Crazy Water Crystals, Crazy Water, the trade-name, and the business, plus (3) the Next Shaving Cream business including trade-marks, plant, machinery and equipment, and the good will of the business, plus (4) all the capital stock of the Oxidine Corporation, plus (5) the trade-mark and the trade-name "Pal-Pinto," formerly used in the mineral water crystal business, and all assets relating to and used in connection with any of the above businesses except a stock of mineral water crystals of approximately 300,000 lbs. located in the Thorndale plant.

The consideration was $200,000, $30,000 cash, $45,000 represented by a note signed by Weaver and Bickers, and a balance of $125,000 according to the terms of a sales contract whereby the Water Company undertook to sell 300,000 lbs. of crystals then at the Thorndale plant and to pay out of such sales 50% thereof on the $125,000 note, retaining the other 50% as operating expenses in executing the sales contract; and in addition to the above to pay inventory price on all inventories, i. e., on all crystals at 5¢ per lb. plus inventory price for cellophane, transparent paper containers and other supplies now on hand for packaging crystals. It was further provided that the Water Company should have the use of the Gibson Park building at Mineral Wells for packaging crystals and the use of appropriate office space in the Crazy Hotel building until such $125,000 should have been paid. In addition the contract was to provide that the Water Company would pay for credit on the $125,000 note 50% of the sales price of Next Shaving Cream and Oxidine as sold by the Water Company; also provided for terms of sale, etc., by the Water Company to dealers; also that any balance on said note at the end of fifteen years was to be paid with-

Strasburger, Price, Kelton, Miller & Martin, Royal H. Brin, Jr., Dallas, for appellant.

Burford, Ryburn, Hincks & Ford and Bruce Graham, Dallas, for appellee.

CRAMER, Justice.

This is an appeal by appellant Water Company from the entry of a summary judgment for the full amount of the balance of principal, interest, and attorneys fees (total $33,409.75), plus 6% interest thereon from date of judgment, April 22, 1953, foreclosure of a lien, and court costs, in favor of appellee Foundation. The history of the $34,212.50 note sued on is as follows: On May 28, 1947, a contract was entered into between the Baptist Foundation of Texas and A. F. Weaver and H. B. Bickers in which the Foundation agreed to sell and Weaver and Bickers agreed to buy (1) certain interests in land in Milam County in the town of Thorndale, being "all buildings, machinery, equipment, ice plant, wells and

out interest. A lien was retained against all the properties as security. The contract further provided that it was contemplated that Weaver and Bickers would form a corporation under the name of Crazy Water Company, Inc., which should have the exclusive right to use the name "Crazy" in connection with the activities, sales, etc., under the contract, except in connection with water served or sold by the Foundation and its assigns in the hotel at Mineral Wells; also that the Water Company or any purchaser of Crazy products would not dispense the same locally in Mineral Wells under the name "Crazy Water," except in the Crazy Hotel and pavilion in the City of Mineral Wells.

The contract provided for the sales price at said hotel; for an audit of the books; for certain transfers, etc., in connection with the sale; and for a sale by the Foundation to the Water Company of certain properties in Mineral Wells for $2,000 and also certain other matters not material here.

The written transfer covered substantially all the assets set out in the contract except that there was a red line drawn through two items as follows:

"Eighth Tract: All oil, gas and other minerals and mineral rights only in one acre conveyed by Lena Urban et al to Marvel Wells, Inc., on March 4, 1934, by deed of record in Book 209, page 338, Deed Records of said county.

"Ninth Tract: All oil, gas and other minerals and mineral rights only in 6.28 acres, which land was conveyed by D. M. Jackson and wife to Marvel Wells, Inc., on January 13, 1934, by deed of record in Vol. 208, page 494, said deed records."

The deed was filed for record July 22, 1948.

It is not disputed that the parties operated under the contract until the amounts paid by the Water Company to the Foundation had reduced the $125,000 principal on the note to approximately $90,000, when because the payments under the contract were too onerous for the Water Company the parties agreed to the execution of a note for $90,000 drawing 3% interest and payable $2,000 per month, secured by a deed of trust lien.

Thereafter payments were made on the $90,000 note until again the parties, after negotiation, executed the note sued on in the principal amount of $34,212.50, on Feb. 1, 1951. The new note being payable $1,000 per month and drawing 4% interest.

At the time this suit was filed the balance due on the $34,212.50 note was $28,000 principal, plus interest.

The Water Company filed a general denial and pled no consideration for the balance due on the note, failure of consideration on the balance due, that the note was entered into by mistake on its part and by reason of fraud, fraudulent concealment, and misrepresentations on the part of the Foundation; that the $90,000 note which purported to be for the balance due on the contract was not due on the contract, but in fact only a far smaller sum which has since been paid was due thereon. Further that the Foundation had not complied with said contract and had not conveyed all the properties which were to be conveyed under the contract; further that the $90,000 note was not a valid act of the Water Company; was never authorized or approved by the Board of Directors or the stockholders of the Water Company since not for the amount properly due; that the $90,000 note included interest, although the contract called for no interest; that the note was entirely void. The Water Company further pled a whole section of the original contract was removed and replaced by a different section after it was signed, without authority of the Water Company or the signers of the contract, which effected a change in the contracts and the amounts payable thereunder. Water Company further pled that its officers and directors (there having been a change in management, ownership and control) who executed the $34,212.50 note had no knowledge of their defenses to the original note and if they had known of such defenses they would not have executed the renewal note. Further that there was

fraudulent concealment and misrepresentation by the Foundation leading to their execution of the renewal note. The Water Company further alleged that under the original contract it was to get 300,000 lbs. of crystals, but it received only 190,000 lbs., and that the consideration for the note failed to that extent even if it owed for the crystals or other inventories which it does not admit, but denies. Further alleged that the notes in question included payment for other inventories which under the agreement were included in the purchase price through error, and that it is entitled to an offset for inventories so included, the consideration having failed to that extent.

Further alleged that the Water Company was also to receive 600 acres in the vicinity of the wells at Thorndale which the Foundation has refused to deliver.

The Foundation then filed a motion for summary judgment asserting no genuine issue of fact for the trier of facts before rendering judgment because (a) the suit is brought by the holder of the note which the Water Company admits is executed, and on which it has made payments; (b) the Water Company admits it executed the $90,-000 note and that it executed the renewal $34,212.50 note; (c) the defenses the Water Company asserts are leveled at the $90,-000 note and admits the $34,212.50 note is a renewal and extension of the $90,000 note; (d) and admits the execution of the deed of trust securing the $90,000 note; (e) that by the execution of the renewal note the Water Company is estopped to assert the defenses of payment, failure of, and no consideration, which it levels at said $90,-000 note, and the $34,212.50 note here sued on; (f) the Water Company executed the renewal note with full knowledge of the alleged defenses to the $90,000 indebtedness and gave up its right to demand immediate full payment of the indebtedness, but instead accepted the $34,212.50 note extending the pay-out period; (g) the Water Company's answer attempts to set up three defenses, namely, no consideration, failure of consideration, and payment; (h) the Water Company's alleged defense of payment is insufficient to constitute a defense in that it filed no account stating distinctly the nature of such payment and the several items thereof as required by Rule 95, Texas Rules of Civil Procedure; (i) the Water Company defenses of no consideration and failure of consideration are inconsistent and destructive of each other and leave it without proper answer.

The Water Company filed a sworn answer to the motion for Summary Judgment asserting (1) there are many genuine issues of fact; (2) that the note sued on is a renewal of the $90,000 note which purports to be the balance due under the contract, but in truth and in fact that sum was not due, but only a far smaller sum and further, the foundation had never complied with said contract and had not conveyed all the properties covered by the contract. That only a far smaller sum was due. Further that the Foundation never complied with its contract by conveying all property covered by the contract; that it does not admit the execution of the $90,000 note as a valid act of the Water Company, but says it never authorized or approved the note through its Board of Directors and stockholders, but the note was signed without their knowledge, authority or approval; that it was not for a proper amount due; it included interest and the contract did not call for interest; was based upon charges for inventory not called for in the original contract and the note was void as to it; that a whole section of the original contract was removed and replaced by a different section after it was signed, which effected a change therein. That the Water Company and its then officers and directors did not know of their defenses to the $90,-000 note and if they had, they would not have executed it. It did admit the execution of the renewal note, but under a mistake of fact brought about by fraudulent concealment or misrepresentation; that it does not admit the execution of such note as a valid debt of the Water Company; that the defenses it has against the $90,000 note apply to the second renewal note since executed on a basis of the balance due on the $90,000 note and executed without knowledge thereof, but under misrepresentations of the Foundation that the $90,-

000 note was a valid obligation when in fact it was not. It did not admit the deed of trust as a valid act of the Water Company and asserts the execution of the renewal note does not estop it as a matter of law from asserting its defenses since executed without knowledge of such defenses and it would not have executed the note had it known the true facts. The Foundation's allegation that it executed the renewal note with full knowledge of all facts is not true, and contrary to the facts as shown by its depositions and affidavits. That there has been a change in the ownership and management of the Water Company and those executing the note had no knowledge of the facts and circumstances which gave them defenses to the note and that such persons who had such knowledge did not know of the execution of the renewal note and would have prevented its execution if they had known that it was contemplated; that plaintiffs knew of the existence of said defenses and willfully concealed them from the management of defendant at the time of the execution of the renewal note; that it had the right to all its defenses, inconsistent or not, and if insufficient should have had the opportunity to amend rather than suffering a summary judgment. That alternative defenses may be asserted though inconsistent; that if its allegations of payment are insufficient, it should be allowed to amend; that alternative defenses are proper though inconsistent. Further that there are numerous issues, such as whether or not the Foundation failed to convey to the Water Company all property called for by the contract; whether or not the $90,000 note was authorized by the Water Company and whether such note included items not called for under the original contract; whether or not a page or pages of the contract were substituted after its execution; whether or not there was knowledge of its defenses at the time the $90,000 note was executed; whether there was misrepresentation or fraudulent concealment by the Foundation at the time the note was executed, and many others. It did admit the execution of the renewal note but under a mistake of fact brought about by fraudulent concealment

and misrepresentation; that it does not admit the execution of such note as a valid debt or act of the Water Company; that the second note for the balance due on the first note was executed without knowledge of such defenses and on misrepresentations by the Foundation that the $90,000 note was a valid obligation when in fact it was not. Does not admit the deed of trust was a valid act of the Water Company since not authorized by the stockholders or Directors and that the execution of the renewal note does not estop it as a matter of law from asserting its defenses not then known to it. That it would not have executed the renewal note had it known the facts; that the Foundation's statement that it executed the renewal note with full knowledge is not true, but contrary to the facts, as shown by its depositions and affidavits to the contrary; alleged a change in ownership and management of the Water Company, and that those executing the note had no knowledge of the facts and circumstances which gave them defenses to the note, nor the failure of consideration because they received 190,000 rather than 300,000 lbs. of crystals and other inventories, etc., above set out. The affidavits and depositions on file, in substance, contain similar statements to those set out in the above answer. The prayer was that the motion be denied.

From the judgment sustaining the motion, appellant has duly perfected this appeal and briefs nine points, in substance: Error in granting the summary judgment because (1) there are many fact issues for the jury; (2) the Foundation did not establish conclusively that there were no issues of fact on the Water Company's defenses to the note; (3) there were issues of fact on its defense of lack of consideration; (4) there were issues of fact on its defense of failure of consideration; (5) as to the validity of the original note for lack of authority to execute it; (6) of unauthorized changes in the original contract; (7) on the issue of mistake; (8) on its defense of fraud, fraudulent concealment, and misrepresentation, and that each of the above defenses if established would be construed a defense to

said note or a part thereof; and (9) the Water Company was not estopped from asserting each of said defenses by the execution of the renewal note.

Appellee, by three counter-points, asserts the summary judgment was correct because: (1) All defenses to the $90,000 note and the $34,212.50 note were leveled at prior existing indebtedness; (2) and the renewals waived all known defenses then existing to such debt, and the Water Company is estopped to urge such defenses to the renewal note; and (3) where no defense was urged to the renewal note, except those known to Water Company at the time of the renewal, the summary judgment was proper.

In our opinion before there can be an estoppel against, or a waiver by, the Water Company to assert its defenses, if any, as against the original contract or either of the renewal notes, there must have been a legal novation of the contract by the execution of the $90,000 note or such a novation of the $90,000 note by the execution of the $34,212.50 note.

■ The general rule is that there can be no novation where there is no new binding agreement for a discharge of the old debt or contract. In Western Brokerage & Supply Co. v. Reclamation Co., 127 Tex. 386, 93 S.W.2d 393, 394, our Supreme Court stated:

" 'A novation is a new contract creating new contractual relations and is subject to the same requisites as to validity as other contracts, such as a legal subject matter, competent parties, a mutual agreement or meeting of minds, and a sufficient consideration.' "

■ Novation is to be distinguished from an accord and satisfaction. 31 Tex.Jur., Novation, secs. 2 to 5 inclusive, and 7 to 14 inclusive; and 7 Ten Year Supp. to Tex. Jur., same sections, and cases there cited.

■ In order to sustain the trial court here the record must show a novation and not an accord and satisfaction as a matter of law. In other words, the contract debt must have been discharged and the intention to so discharge the old obligation must be shown by the undisputed evidence to such an extent that there was no question of fact thereon for the trier of the facts, before the summary judgment can be sustained. The consideration for the $90,000 note would have to be shown to have been an agreed, complete discharge of the contract obligation with all the elements above stated present.

Our examination of the record shows no more than that the payments under the contract were too onerous on the Water Company and the first note was given in order that the Water Company could more readily and conveniently meet the payments to the Foundation. It also shows that the note sued on was given for the purpose of reducing the monthly payments on the balance of the $90,000 note. We find nothing in the record to justify holding there was no issue of fact on the Foundation's affirmative issues of a meeting of the minds of the parties on an agreement between the parties to discharge the Water Company's contract indebtedness to the Foundation by the delivery and acceptance of the $90,000 note, nor a discharge of the $90,000 note or the balance thereon by the execution and delivery of the $34,212.50 note. At most, there is but a question of fact for the jury or trier of the facts thereon. The satisfaction of the prior contract indebtedness can only come into being by proof of all elements of a valid novation thereof.

The defenses of the Water Company, if established by a preponderance of the evidence on a re-trial of the case, would constitute a defense, at least in part, to the Foundation's debt. In our opinion the evidence in the record raised questions of fact on the issues of novation and on the defenses of failure of consideration, or partial failure of consideration, of the indebtedness due the Foundation.

Points 1, 2, 3, 4, and 9 are sustained.

Such action makes it necessary for us to reverse the judgment of the trial court and

remand the cause for a new trial, without the necessity at this time of considering points 5 to 8 inclusive.

For the reasons stated the trial court's judgment is reversed and the cause remanded for a trial on the merits.

Reversed and Remanded.