James H. CROSSLAND, Appellant,

v.

NELSON AUCTION SERVICE, INC.,
Appellee.

No. 7748.

Court of Civil Appeals of Texas.
Amarillo.

Dec. 26, 1967.

Rehearing Denied Jan. 29, 1968.

Ben E. Jarvis, Tyler, for appellant.

Culton, Morgan, Britain & White and Donald E. Jackson, Amarillo, for appellee.

DENTON, Chief Justice.

This suit was brought by James H. Crossland, appellant, against Nelson Auction Service, Inc., for damages resulting from an alleged unlawful withholding of escrow funds. Nelson Auction brought a cross-action against Crossland seeking damages alleged to have resulted from certain unlawful acts on the part of Crossland. The trial court, sitting without a jury, entered judgment that both the plaintiff and cross-plaintiff take nothing. Crossland has perfected this appeal.

On February 19, 1963, at appellant's request, appellee sold certain items of machinery belonging to appellant at an auction in Houston, Texas. The various items of machinery were sold for a total of $44,650.00. For conducting the sale, the appellee received its commission of $2233.-50, or 5% of the sale. The contract between the parties provided for the successful purchasers to pay at least ⅓ of the purchase price on the day of the purchase and the balance to be financed by either Nelson or a financial firm present at the sale. Appellant admits that prior to the sale he determined the price for which the items were to be sold and then made arrangements with several individuals to bid this predetermined amount in order for the purchasers to obtain 100% financing. He further admits he furnished cash to these buyers with which to make the ⅓ down payment. Appellee's agents became suspicious of the bidding and after the close of the auction, refused to deliver immediately the proceeds of the sale to appellant. On March 2 following the sale in February, appellee delivered $20,000.00 to appellant and on March 15, they delivered $11,914.71 to appellant and withheld $9811.12 as an escrow fund to insure the payment of promissory notes given by the various purchasers at the auction. By agreement of the parties, the payment of such notes was guaranteed by appellee. By letter of March 18, 1963 to appellant, appellee outlined the schedule of payments to be made to appellant from the escrow fund in the event the note payments were not in default. It is uncontradicted the payments on the promissory notes became delinquent within two or three months after they were executed and that this fact was known to all parties.

By brief, appellant concedes appellee was authorized by appellant to withhold the escrow fund. He makes no contention this withholding of funds was wrongful. Ark Distributing Company, a financing firm, financed the balance of the purchase price of the machinery sold at the auction. Ark had a guarantee from appellee against any loss from its purchase of the equipment contracts. It is uncontradicted that after the sale and without appellee's knowledge and consent, appellant reacquired some of the machinery sold at the auction to Wal-

lace, Crawford and Black and resold it. Sometime after the notes became delinquent, Ark Distributing Company called upon appellee to honor its guarantee of the notes and appellee paid over to Ark approximately $19,000.00 which included the $9811.12 held in the escrow fund. Ark then assigned the contracts to appellee.

Appellant contends appellee's letter of March 18, 1963, advising appellant of its intention to withhold the escrow funds and submitting a schedule of payments, constituted a new contract between the parties; that such contract superseded the original agreement; and that appellee breached its contract by failing to pay over to appellant the scheduled payments. Appellant takes the position that appellee knew appellant fraudulently induced the auction contract by attempting to obtain 100% financing of the machinery, but continued with that knowledge to proceed under that contract; that, therefore, appellee is obligated to pay the escrow fund over to appellant. Appellant then argues the March 18 letter supersedes the original contract and seeks the escrow fund under the "new contract".

■ The Rule is well settled that if one is induced by fraud to enter into a contract and continues to receive benefits under the contract after becoming aware of the fraud, he affirms the contract and waives his right of recision. Rosenbaum v. Texas Building & Mortgage Company, 140 Tex. 325, 167 S.W.2d 506. This Rule is not applicable to the facts under this record. Recision was not pleaded by either party and it therefore does not enter into this suit.

■■ All parties agree upon the applicable Rule of law dealing with the prerequisites of novation of a contract. They included: a previous valid obligation; the agreement of all parties to a new contract; the extinguishment of the old contract; the validity of the new contract; and the allegation and proof of consideration for the new contract. McKinney v. Flato Bros. Inc. (Tex.Civ.App.) 397 S.W.2d 525. Crazy Water Company, Inc. v. Baptist Foundation of Texas (Tex.Civ.App.) 268 S.W.2d 776 (Ref. N.R.E.). We are of the opinion the uncontroverted facts do not establish novation. Although there is no question the original contract was valid, the evidence does not support the fact all parties agreed to a new contract. Appellee's letter did not in itself constitute a new contract, but set out a method whereby the payments to appellant would be made. It set up an escrow fund thereby altering the method of payment due to the admitted fraudulent acts of appellant. There was no meeting of the minds of the parties as to the establishment of the escrow fund, as appellant testified he did not agree to it. We conclude appellant's contention is without merit.

Appellant next challenged the right of appellee to retain the escrow fund to the exclusion of appellant for the reason it failed to properly protect the fund and offered no valid excuse for its actions. Within two or three months after the sale the various purchasers began to default on their notes. Ark Distributing Co., the financing agent, did in fact make some efforts to collect the notes, but it was during this period appellant himself reacquired some of the machinery from the purchasers and resold it. The record is confusing as to what was accounted for by appellant to Ark. It is uncontradicted that none of the resale proceeds were accounted for to appellee. It is apparent these post sale transactions were rather loosely handled on the part of appellant, and appellee did not turn over any of the notes to its attorney for collection until the notes were long past due.

■ The trial court filed no findings of fact or conclusions of law and none were requested. In the absence of such findings it must be presumed on appeal that the trial court resolved all fact issues in such a manner as to support the judgment, and if there is proper evidence to sustain the judgment on any theory raised by the pleadings, it should not be disturbed by the appellate court. American Guardian Insurance Co.

v. Rutledge (Tex.Civ.App.) 404 S.W.2d 847. Madden v. Madden (Tex.Civ.App.) 365 S.W.2d 427. We conclude the evidence supports the trial court's implied findings that appellee did not breach its contract and that appellant sustained no damages.

The judgment of the trial court is affirmed.