Helen G. MORSCH, Appellant,

v.

Laura Lynn METZGER et al., Appellees.

No. 936.

Court of Civil Appeals of Texas,
Corpus Christi.

March 13, 1975.

Rehearing Denied April 3, 1975.

Chas N. Cartwright, Howard, McDowell, Bennett & Cartwright, Corpus Christi, for appellant.

Bob J. Spann, McDonald, Spann & Smith, Corpus Christi, for appellees.

OPINION

BISSETT, Justice.

This is a wrongful death action. Helen G. Morsch, the surviving wife of Jean P. Morsch, sued Laura Lynn Metzger, a minor, for the wrongful death of her husband, the said Jean P. Morsch. She alleged that her husband, while walking on a sidewalk, was struck and killed by an automobile which was backed out of a driveway by defendant. Trial was to a jury. A take nothing judgment was rendered against plaintiff, who has appealed. The parties will be referred to as "plaintiff" and "defendant", as they were in the trial court.

The jury convicted defendant of several acts of negligence which proximately caused the injuries and death of Mr. Morsch. The jury further found that Mr. Morsch failed to keep a proper lookout for defendant's car, which was a proximate cause of his injuries and death; failed to move out of the path of defendant's car, which was negligence and a proximate cause of his injuries and death; and failed to give to defendant such signal of his presence as would have been given by a person using ordinary care, and that such failure was a proximate cause of his injuries and death. Plaintiff challenges the jury findings with "no evidence" and "factually insufficient evidence" points.

A "no evidence" point presents a question of law, and in deciding that question, we consider only the evidence and the inferences tending to support the jury's finding and disregard all evidence and inferences contrary thereto. Butler v. Hanson, 455 S.W.2d 942, 944 (Tex.Sup.1970).

The "factually insufficient evidence" points present factual questions as opposed to law questions, and they require us to consider all of the evidence in the record. In re King's Estate, 150 Tex. 662, 244 S. W.2d 660 (1951). We first review the evidence and the inferences reasonably drawn therefrom in the light most favorable to the defendant with respect to the jury's answers to the challenged issues, and we disregard all evidence and inferences to the contrary.

This is a circumstantial evidence case. The last person who saw the deceased before defendant's car backed into him was plaintiff, who said that he told her he was going to take a short walk. The next time she saw him was at the very moment that he was struck by the car. There were no eyewitnesses to the actions, conduct, bodily movements, or the manner in which the deceased walked from the time he left his home until the occurrence of the accident. No one testified as to what the deceased did or did not do as he approached the area of the accident.

The accident occurred in a residential area in Corpus Christi, Texas, on April 8, 1972, at about noon. Mr. Morsch, hereinafter called "the deceased", died later during that day. The weather, at the time of the accident, was clear, and it was a bright, sunshiny day.

The deceased was 82 years of age, and resided with his wife at 443 Indiana Street, Corpus Christi, Texas. He left his home for the walk about 10 minutes before the accident took place. At that time, defendant and Erica Luckstead, her girl friend, were helping with the painting of a garage at 459 Indiana Street. Immediately preceding the accident, the girls left the painting job, and walked to a car which was parked in the driveway at the front corner of the house at 459 Indiana. Both got in the car. Defendant backed the car out of the driveway across the sidewalk into the gutter portion of the street, at which point she said that she felt a bump;

she then stopped, drove forward a few feet, got out of the car and found the deceased lying out in the street, several feet from the curb.

Plaintiff testified in great detail concerning the physical condition of the deceased. She said that he usually walked three miles per day; that he looked around as he walked and observed things; that he was alert and had full use of his faculties; that he did not have any limitations in his gait or walk and while he walked slow and carried a cane, he did not have to use the cane as an aid to walking. When asked if the deceased could run, plaintiff replied;

"I don't know, I guess he could have if he had to, but I don't know that he ever had to."

In answer to the question, "Was he of a physical condition where he could walk quickly?", plaintiff said:

"He was in pretty good physical condition, otherwise he could not walk three miles a day."

Plaintiff further testified that the deceased had "20–20" vision with glasses; that he had good hearing in one ear and even though he wore a hearing aid in the other ear, his hearing was good when his hearing aid was on. She also said that the deceased drove a car; that he went fishing about twice a week; that he fished from both piers and chartered boats; and that, on occasions, he ran errands for her, and did work around the house. The deceased was wearing both his hearing aid and his glasses at the time he was injured.

Counsel for plaintiff asked plaintiff to "tell the jury what you remember of that accident today". She responded:

". . . I just happened to go to the front door, and I heard him scream just as I got to the front door, and I ran down there just as fast as I could, and he was lying out in the street, and I saw the girl drive back up in the driveway . . . ."

A witness who appeared at the scene immediately after the accident occurred, over defendant's objections, was asked to relate to the jury "what Mrs. Morsch told you in describing the accident". His recollections were:

"A She indicated that she was standing on the front door, saw her husband knocked into the street by this car backing out of 459 Indiana and hit him again before returning back into the driveway.

Q Did she indicate to you where her husband was before the accident occurred?

A No _ _ _ correction, she said that he was walking on the sidewalk, yes."

The deceased was taken to a hospital and arrived there about 35 or 40 minutes after he was injured. His personal doctor attended to him. The doctor, over defendant's objection, told the jury that the deceased told him at the hospital that he had been hit and run over by an automobile. In response to the question "Did he state where he was at the time he was struck?", the doctor replied:

"My mental picture was that it was related to a driveway and a sidewalk, that the car was backing out of a driveway and struck him and knocked him down and ran over him".

The doctor further testified that considering his age, the deceased was in good physical condition just prior to the accident.

Defendant testified that she and Erica left the garage, which was in back of the house, and walked to the car (a white 1966 Dodge Charger two-door), which was parked on the driveway. She said that the center of the car was opposite the corner of the house (where the porch joins the house), which was 19 feet distant from the edge of the sidewalk nearest the house. The sidewalk is 4 feet wide. The distance from the center of the parked car to the edge of the street is approximately 33 feet. Defendant stated that she and Erica were talking as they approached the parked car, that they were walking together, and that they were not in a hurry. Each of the girls passed to her respective side of the car, opened the door, got in and closed the door. Defendant said that after getting in the car she first started the motor, looked to the right out of the back window, looked into the inside rear view mirror, looked into the outside rear view mirror (on the driver's side), looked outside the left door, put the car in reverse gear, and then looked back over her right shoulder, before the car started moving backward. Defendant further stated that she felt the car bump something when it reached the gutter along the edge of the street; she then braked the car to a stop, drove forward a few feet, got out of the car, and discovered the deceased lying in the street to the rear of the car.

Erica Luckstead, who was 17 years of age at the time of the accident, said that the car was backing at "a very moderate speed", and that plaintiff, after she got in the car, "took a lot of time" looking at her mirrors, looked behind her, to the left and to the right before she started to back the car. Erica placed the rear tires of the car out in the street when she noticed the bump. She stated that the car did not proceed back very far (after the bump) before plaintiff stopped and started forward because "we were going very slowly". She placed the center of the car while it was parked on the driveway as being "a little bit further up in the driveway beside the house" from that indicated by defendant.

It is undisputed that the climatic conditions existing at that time did not impair the visibility of either defendant or the deceased. There was no obstruction of any kind that impaired the deceased's view of the car, either while it was parked or when it was backing up.

The law requires that a person keep and maintain that kind of a lookout

that a person of ordinary prudence in the exercise of ordinary care would keep and maintain under the same or similar circumstances. A pedestrian who is walking along a sidewalk in a residential area of a city has a duty to keep a proper lookout for vehicles backing out of driveways into the street. But, the failure to do so is a proximate cause of injuries sustained as a result of a backing vehicle striking him only if such lookout would have revealed something to him that should have alerted him to danger at such time or distance that proper evasive action by him would have avoided the accident. The above rules are well settled and do not require citation of authorities.

There is evidence that the girls, defendant and Erica, were talking as they casually approached the parked car, got in and shut the doors; defendant then started the motor, adjusted the rear view mirror, looked to her right and to her left, and looked over her right shoulder to the rear of the car before she put the car in reverse gear and started backing. The jury was entitled to conclude from the circumstances that a person described as being alert, with 20–20 vision, able to hear ordinary sounds and to walk with ease, whether approaching the driveway or behind the car at the time the girls came to the automobile, should have observed the girls as they got in the car, should have heard the doors close, and should have heard the motor when it was started. The jury could have further concluded that if the deceased was not already in the sidewalk area back of the driveway, he would not then have entered the path of the backing car, and if he was already behind the car, he could have backed up or moved on beyond the path of the car. A matter of moving two steps forward or backward would have avoided the accident.

■ The testimony of the girls puts the point of impact at least 33 feet to the rear of the center of the car in its parked position. The only evidence relating to speed is that the car was backing at a moderate rate of speed. The actions of the girls and the noise caused by the closing of doors and the starting of the motor should have alerted the deceased to the fact that the driver of the car would immediately back out into the street and across the sidewalk. Several seconds, necessarily, elapsed from the time that it should have become apparent to the deceased that the car was going to be backed across the sidewalk and into the street until the time it struck the deceased. It has been judicially noticed by our courts that reaction time is generally three-fourths (¾ths) of a second. Under the evidence most favorable to the jury findings, the deceased had more than three-fourths (¾ths) of a second within which to take evasive action that would have prevented his being injured. The jury could reasonably infer that the backing and walking occurred simultaneously; that this took place over the space of several seconds, and that during this time interval the deceased should have known that the car was going to back out into the street and would strike him if he did not move out of the way. Although not required to anticipate negligent conduct on the part of defendant, the deceased was not entitled to ignore that which was plainly audible or that which was plainly visible, and which would have been heard or seen by a person of ordinary prudence similarly situated. De Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95 (1955).

■ A review of the above evidence and the inferences reasonably drawn therefrom in the light most favorable to the jury's findings relating to the deceased's contributory negligence, and disregarding all evidence and inferences to the contrary, compels us to hold that there was evidence beyond a scintilla which supports an inference that the deceased did not keep a proper lookout, and would have seen the backing car if he had been keeping such a lookout as a person using ordinary care would have kept under the same or similar circumstances, and that he could have either

stopped, and allowed the car to cross the sidewalk, or could have stepped out of its path and thus avoided the accident. See Torres v. Duaine, 496 S.W.2d 773 (Tex. Civ.App.—Corpus Christi 1973, no writ). Plaintiff's "no evidence" points are overruled.

There is evidence in the record which is in conflict with some of the evidence discussed in our disposition of plaintiff's "no evidence" points. One of plaintiff's neighbors testified that she had seen the deceased walking in the neighborhood on many occasions, and that "he walked very feeble and he usually walked along looking down at the sidewalk". The witness was asked if she had "ever seen him (the deceased) have a problem with his balance"; she answered:

"No, but I have had trouble because he wouldn't get out of the way of anything".

A witness, who lived in the neighborhood, testified that the deceased used a cane, and "appeared to need it when he was walking". In describing the deceased's appearance when walking, the witness also said:

"He looked kinda stooped and, you know, bent over, and he shuffled while he walked, shuffled along and went kinda slow . . . ."

The lady who lived at 459 Indiana Street testified that plaintiff, at the scene of the accident, said: "I shouldn't have let him go out by himself". She further testified that the deceased "walked like it was very hard for him to get around", and that his gait was "rather slow; a little unsteady".

The only evidence in this record which indicates that the deceased was on the sidewalk when he was hit by the car is found in the statements made by the deceased to the doctor at the hospital and those made by plaintiff at the scene of the accident. Under that evidence the point of impact would have been from 5 to 10 feet from the rear of the car. The statements of plaintiff and of the deceased are in conflict with the testimony of plaintiff and of Erica Luckstead, both of whom placed the point of impact at the time when the rear wheels of the car were in the gutter portion of the street. The distance from the center of the parked car on the driveway to the gutter is about 33 feet. Since it was established by the evidence that the rear end of the car extended about 2½ feet beyond the rear wheels, the point of impact would be out in the street, a distance of from 33 to 35 feet from the center of the car while it was in its parked position. Therefore, the distance that the car backed from its parked position until it struck the deceased is far greater if the testimony of the two girls is believed than is the case if the jury accepted the statements of plaintiff and the deceased. The testimony of plaintiff and Erica and the other facts and circumstances established by the evidence are sufficient to enable the jury to reach a conclusion as to the distance backed by the car before it collided with the deceased.

■ It is the province of the trier of facts to resolve conflicts and inconsistencies in the testimony of a witness or between witnesses. Biggers v. Continental Bus System, Inc., 157 Tex. 351, 303 S.W.2d 359 (1957). An appellate court does not have the authority to set aside a fact finding because of conflicting evidence.

■ Ordinarily, proper lookout and the related issue of proximate cause are proper questions for the trier of facts, the jury in this case. Texas & Pac. Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332 (1946). The same holds true for the other issues in this case relating to the deceased's contributory negligence which proximately caused the accident.

■ Negligence, causation, and improper lookout, like any other fact, may be established by circumstantial as well as by direct evidence. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958).

Plaintiff, in her brief, makes the statement: "her (plaintiff's) res gestae statement to a trained accident investigator and Mr. Morsch's own statement before his death constitute the only direct evidence of his actions at the time of the accident". We do not agree. Those statements, at most, constitute some evidence that the deceased was walking on the sidewalk before he was struck by the car, and nothing more. They do not constitute any evidence relating to the deceased's actions or conduct while he was approaching the area of the driveway, or immediately prior to impact.

Plaintiff further argues that the evidence introduced by defendant that the "deceased was seen on other occasions to look down at the sidewalk while walking, shuffled along and went kinda slow" constituted habit evidence that was not relevant to the issue of what the deceased was doing at the time of the subject accident, and, therefore, constituted "no evidence" of negligence. The argument is without merit. Defendant's evidence was not restricted to the habits of the deceased, nor did it indicate any behavior pattern or custom on the part of the deceased. The testimony complained of related to the physical condition of the deceased and the manner in which he walked and whether or not he was observant and needed a cane to assist him when walking. Plaintiff introduced evidence which indicated that the deceased was alert; was able to hear and see; walked with ease; and did not use a cane as an aid to walking. Defendant's evidence was in rebuttal to the evidence offered by plaintiff with respect to the deceased's physical condition. Plaintiff did not object to the introduction of such evidence, did not have an assignment in her motion for new trial that the trial court erred in admitting such evidence, and has raised no point of error in this appeal to that effect. Under those conditions, plaintiff cannot now argue that the evidence denominated by him as "habit evidence" cannot be considered as evidence in support of the jury's answers to the challenged issues.

The thrust of plaintiff's argument is that the "habit evidence" is the only justification for the jury's answers to the issues with respect to the deceased's contributory negligence. We disagree. There is other evidence in the record that fully supports the jury's findings. Even assuming, arguendo, that the questioned evidence constituted habit evidence, plaintiff's argument cannot be sustained. It is now settled in this state that habit evidence is admissible to establish negligence (or care) where there are no eyewitnesses to the accident. Missouri-Kansas-Texas Railroad Company v. McFerrin, 156 Tex. 69, 291 S.W.2d 931 (1956); Dearing v. Nutter, 402 S.W.2d 889 (Tex.Sup.1966). Here, there were no eyewitnesses to the accident. The statement by plaintiff that she saw the car strike her husband makes her an eyewitness only to the actual impact. It does not make her an eyewitness to what either the deceased or the driver of the car was doing at and immediately before the impact. Specifically, the statement does not make plaintiff an eyewitness to the manner in which the deceased was walking, or whether he was observant of the surroundings at and immediately before the time that he was struck by the car.

In cases of this character, standards of ordinary care such as the extent of observation which the deceased should have made at any particular time cannot be fixed with any degree of certainty but must be left in large measure to the trier of fact. The jury is not only the judge of the facts and circumstances of a case, but is also authorized to draw reasonable inferences and deductions from all the evidence produced before it by the litigants. Its findings may not be disregarded if the record discloses any evidence of probative value which, with inferences which may be properly drawn therefrom, will reasonably support the same. Texas Rules of Civil Procedure, rule 301; Lynch v. Ricketts, supra.

After considering all of the evidence, we hold that the facts and circumstances established by the evidence and the inferences which can reasonably be drawn therefrom support the jury's findings of contributory negligence by the deceased which proximately caused his injuries and death. The evidence was factually sufficient to support the jury's answers to the challenged issues. Plaintiff's "factually insufficient evidence" points are overruled.

The judgment of the trial court is affirmed.