Louis A. NEWITT, Appellant,

v.

CAMDEN DRILLING COMPANY, Appellee.

No. 1159.

Court of Civil Appeals of Texas, Corpus Christi.

June 9, 1977.

Rehearing Denied June 30, 1977.

John C. Holmgreen, Jr., Gary, Thomasson, Hall & Marks, Corpus Christi, for appellant.

Charles Porter, Porter, Taylor, Gonzalez, Thompson & Rogers, Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

This is a suit for moneys due on a drilling contract brought by Camden Drilling Company. The defendant Louis A. Newitt contended that the original written contract was superseded in certain particulars by a subsequent oral contract. The jury answered special issues favoring defendant Newitt on his affirmative defense of novation. The trial court disregarded the findings of the jury however, and entered a judgment non obstante veredicto for Camden. It is from this judgment that Newitt appeals.

Newitt desired to lease a bay drilling barge for the purpose of drilling an oil well in Tres Palacious Bay in Matagorda County, Texas. Newitt, a petroleum geologist, contacted Camden Drilling Company for the purpose of leasing one of its drilling barges, some drill pipe and some associated implements necessary for drilling the well. Subsequently, Newitt executed a written contract with Camden for the drilling barge and equipment. This included "drill collars" and "subs" which are used to join pipe together and to provide weight and tension on the drilling pipe. These drill collars, subs and drill pipe are referred to in the contract as "in-hole equipment". It is the value of this equipment that is the subject of this controversy.

After the drilling barge was in place and the drilling operations had commenced, the drill pipe became stuck in the hole at a depth of approximately 3,000 feet. Newitt engaged a special crew to conduct a "fishing" operation in an attempt to recover the drill pipe. This particular operation is complex and expensive, requiring special tools and a special crew. The "fishing" operation was successful although it lasted five (5) days and cost Newitt approximately $18,-000.00. Newitt, after consulting with his engineers, believed that they could overcome the loss of circulation that had caused the drill pipe to stick in the first place.

They decided to start drilling operations again. However, the pipe got stuck a second time at the same depth. They then realized that they could not maintain circulation and, therefore, they would not be able to complete the well.

Newitt was now faced with a new dilemma. He had two choices: first, he could re-engage the "fishing crew" and recover Camden's pipe and return it to the drilling company; or, second, he could purchase the pipe from Camden and cement and leave it in the hole. Newitt had the responsibility of either returning the "in-hole equipment" to Camden or pay it 100% of the current new replacement costs of such equipment delivered to the well site. The "fishing crew" was still in the area and Newitt knew that he could rehire them to conduct a second fishing operation and recover the pipe. He estimated that the second fishing operation would cost him from $9,000.00 to $18,000.00. Newitt also estimated that if he permanently cemented the drill pipe in the well, according to the contract, he would be required to pay Camden the new replacement costs which he estimated to be about $22,000.00.

Faced with these alternatives, Newitt called L. D. Crumly, the President of Camden Drilling Company, to see what sort of price arrangements could be worked out on the used pipe. Crumly acknowledged over the telephone that Camden's pipe was grades three and four and was worth "a whole lot less than 100% new pipe costs". The testimony as to the content of the ensuing conversation between Newitt and President Crumly are diametrically opposed to each others' interpretation. However, since the jury answered the special issues favorably to Newitt, and since the trial court granted a judgment non obstante veredicto against Newitt, and further, since Camden does not by cross points complain of the evidence by factual insufficiency points, we will view all the evidence and inferences therefrom most favorably toward the jury's answers.

Newitt's version of the conversation with Camden's President, Crumly, was that Crumly told him that he would not require Newitt to recover the pipe but that: "you can pay me for them . . ." Newitt testified that when he pressed Crumly for specific figures, Crumly replied that it would be several days before he could return to his Houston office where he would have to consult with his accountant for depreciation schedules, that he was not sure how many joints of pipes or of what grade were involved. Newitt suggested that the price term be "the fair market value" which, according to Newitt, Crumly agreed and accepted.

Based on these statements by Crumly, Newitt ordered the pipe cemented in the hole and he abandoned the well. The "in-hole equipment" was irretrievably lost. When the parties could not agree upon the value of the pipe, Camden sued Newitt for the full 100% of the replacement costs of its pipe.

Newitt's answers to Camden's suit were attacked by Camden by a series of special exceptions. The trial court sustained these special exceptions generally on the grounds that Newitt's defense failed to show consideration for the modification or novation of the contract. However, after the third amended answer was filed and the special defense was replead (generally in the same language as had been plead in prior answers), the trial court overruled Camden's special exceptions and the case went to trial on Newitt's third amended answer.

At the conclusion of testimony, the case was submitted to the jury on four special issues. In response to these special issues, the jury found:

1) that after the in-hole equipment became stuck in the hole, L. D. Crumly agreed to accept the fair market value of the equipment.

2) that in reliance on Crumly's agreement, Newitt cemented the equipment in the hole.

3) that the fair market value of the equipment cemented in the hole was $13,000.

4) that the 100% new cost of the equipment cemented in the hole was $25,992.25.

Newitt filed a motion for judgment asserting that the jury's answers to special issues 1 and 2 established an affirmative defense of novation. Camden filed a motion for judgment non obstante veredicto and motion to disregard the jury's findings. Camden asserted that the trial court erred in submitting the issues (1 through 3) to the jury and that these findings should be disregarded because they are not supported by the pleadings and the evidence. The trial court then entered its judgment directing a verdict for Camden Drilling Company for 100% of the cost of the new equipment which the jury found to be $25,992.25 (special issue 4).

The appellant in his first point of error complains of the trial court's granting the motion for judgment non obstante veredicto. The point of error actually addresses itself to the question of whether or not the defendant's pleadings and the evidence were sufficient to support the submission of and the jury's answers to the relevant special issues. The granting of a motion for judgment non obstante veredicto is justified when an instructed verdict is proper. An instructed verdict is proper only under very limited circumstances. These circumstances are: 1) that a defect (specifically indicated) in the opponent's pleading makes it insufficient to support a judgment; 2) that the evidence proves conclusively the truth of fact propositions which, under the substantive law, establish the right of the movant, or negative the right of his opponent, to judgment; or 3) that the evidence is insufficient to raise an issue as to one or more fact propositions which must be established for the opponent to be entitled to judgment. McDonald Texas Civil Practice, § 11.28.1 (1970).

Newitt's defense was in effect a novation. The elements which must be plead and proved to establish a novation are: 1) a previous valid obligation; 2) the agreement of all the parties to a new contract; 3) the extinguishment of the old contract; 4) the validity of the new contract; and 5) consideration for the new contract. *Hidalgo County v. Pate*, 443 S.W.2d 80 (Tex.Civ. App.—Corpus Christi 1969, writ ref'd n. r. e.); *Crossland v. Nelson Auction Service, Inc.*, 424 S.W.2d 318 (Tex.Civ.App.—Amarillo 1967, writ ref'd n. r. e.); *McKinney v. Flato Brothers, Inc.*, 397 S.W.2d 525 (Tex. Civ.App.—Corpus Christi 1965, no writ); *Crazy Water Co. v. Baptist Foundation of Texas*, 268 S.W.2d 776 (Tex.Civ.App.—Dallas 1954, writ ref'd n. r. e.).

In order to determine whether or not the judgment non obstante veredicto was correct, we must now determine if there was evidence which would support each of the elements of novation which were found by the jury. In determining whether or not there is any evidence to support jury findings, we use the following test: 1) Only testimony which tends to support the findings are considered; 2) every intendment from the evidence must be indulged in favor of the jury findings; and 3) evidence that conflicts with the jury findings is disregarded. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.Sup.1965); *Rosales v. Lara*, 519 S.W.2d 245 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.); *Hudson v. Gaines*, 501 S.W.2d 734 (Tex.Civ.App.—Corpus Christi 1973, no writ); *City of Austin v. Salazar*, 241 S.W.2d 445 (Tex.Civ.App.—Austin 1951, writ ref'd n. r. e.). Therefore, where the issue or verdict has support in the evidence, the trial judge may not render judgment non obstante veredicto even though the great weight and preponderance of the evidence might be to the contrary. *Gulf, Colorado & Santa Fe Railway Company v. Deen*, 158 Tex. 466, 312 S.W.2d 993 (1958), cert. denied 358 U.S. 874, 79 S.Ct. 111, 3 L.Ed.2d 105; *Morsch v. Metzger*, 520 S.W.2d 564 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.). See Rule 301, T.R.C.P.

The record establishes without dispute a valid previous obligation which was the rotary bid proposal and contract executed by Camden and Newitt. The agreement of Camden and Newitt to a new contract and the extinguishment of the old contract was established by Newitt's testimony. He stated that he and President Crumly discussed Camden's rights and

Newitt's obligations under the old contract and thereafter agreed to accept the fair market value of the pipe instead of the replacement costs. The last essential element to a valid new contract was consideration.

At the time of the oral conversation between Newitt and President Crumly, the consideration may have been that Camden decided that it would rather have cash money (at fair market value) for the old drill pipe (grades three and four that had been stuck in the hole two times) than to have its old drill pipe returned. It may have been that Camden decided that the fair market value of its pipe paid in cash and the good will of Newitt would be a better bargain for Camden than to have the old pipe returned. The consideration flowing toward Newitt may have been that Newitt would rather pay the fair market value of the drill pipe in cash than to attempt to retrieve it from the hole and risk paying more for the retrieval of the pipe than it would cost to pay the fair market value. Regardless of whether or not any of the above considerations were the true considerations (because there is no such direct evidence in the record only circumstantial evidence of such), there were, however, undisputed mutual advantages flowing from Newitt to Camden and from Camden to Newitt. These advantages are sufficient consideration for the new agreement between the parties. Reciprocal promises are sufficient consideration. "Where no other consideration is shown, mutual obligations by the parties to the agreement will furnish a sufficient consideration to constitute a binding contract." *Texas Gas Utilities Company v. Barrett*, 460 S.W.2d 409 (Tex.Sup.1970), quoting with approval *Clement v. Producers' Refining Co.*, 277 S.W. 634 (Tex.Comm'n App.1925, judgmt. adopted). See also *Lassiter v. Boxwell Brothers, Inc.*, 362 S.W.2d 884 (Tex. Civ.App.—Amarillo 1962, no writ); *McDonald v. McDonald*, 143 S.W.2d 142 (Tex. Civ.App.—Austin 1940, writ dism'd judgmt. corr.).

The jury found in effect that Newitt actually promised to pay the fair market value for the pipe stuck in the hole and at the same time give up the right to retrieve and return the old pipe. Camden agreed to receive the fair market value (in cash) for the old pipe rather than having the actual pipe returned and at the same time giving up the chance of receiving 100% replacement costs in the event the pipe could not be retrieved. We hold that the mutuality of promises were sufficient consideration to support the novation.

The only remaining question is whether or not Newitt's pleadings were sufficient to support the submission of special issue number 1. Paragraph two of Newitt's trial pleadings reads as follows:

"2. Further, and in the alternative, defendant would show that defendant and Camden entered into a Rotary Drilling Bid Proposal and Contract, under the terms of which Camden was to provide certain services and materials to defendant at the rate and as described therein. Implicit in this contract was the expectation that defendant would return Camden's drilling rig and equipment to Camden when the contract expired. While defendant was using Camden's rig and other equipment to drill the oil well described in the contract, certain of Camden's drill pipe and other equipment became stuck in the well hole. Defendant successfully removed this drill pipe and other material from the well hole. Nevertheless, upon re-entry into the well hole, this pipe and other material again became stuck. Defendant knew that he was obligated by the contract to return Camden's pipe and equipment, but also realized that the cost of retrieving this pipe and equipment would exceed the pipe's and equipment's value. Defendant discussed this situation with Camden's President, who agreed to accept a sum of money amounting to the fair market value of this pipe and equipment as a substitute for the pipe and equipment in itself. In the alternative, Camden agreed to sell this pipe and equipment to defendant at its fair market value."

Although this pleading is somewhat less than a model for the plea of novation, it is sufficiently explicit to apprise Camden of the defense asserted. Pleadings need not be instruments of precision if they give the opposing party fair notice of the proof which will be introduced against him at trial. Although this pleading is not as explicit as could be desired, it is sufficient to apprise Camden of the defense that Newitt was asserting. "The plaintiff is required to allege a 'cause of action' and the defendant a ground of defense, sufficient upon its face to result, if established, in a judgment favorable to the pleader. The technical fullness of such allegations is unimportant, however, so long as the pleading as a whole conveys fair notice." 2 McDonald Texas Civil Practice § 5.07.1 (1970). *McCane Sondock Detective Agency v. Penland Distributors, Inc.*, 523 S.W.2d 62 (Tex. Civ.App.—Houston [14th Dist.] 1975, no writ); *Osteen v. Crumpton*, 519 S.W.2d 263 (Tex.Civ.App.—Dallas 1975, writ ref'd); Rule 45, T.R.C.P.

We hold that Newitt's pleadings and evidence were sufficient to support the defense of novation. The trial court erred in rendering judgment non obstante veredicto. The judgment is REVERSED and judgment is here rendered that Camden Drilling Company shall be entitled to $13,000.00 (the fair market value of the "in-hole equipment" as found by the jury) from Louis A. Newitt, with interest at the rate of 6% from October 12, 1973 to the date of judgment and at the rate of 9% per annum thereafter.

REVERSED AND RENDERED.