**TEXAS PAPER STOCK COMPANY**

v.

**CORPUS CHRISTI FOOD CITY, INC.**

**No. 1597.**

Court of Civil Appeals of Texas, Corpus Christi.

Oct. 16, 1980.

Rehearing Denied Nov. 6, 1980.

Darrell L. Barger and James W. Wray, Jr., Kleberg, Dyer, Redford & Weil, Corpus Christi, for appellant.

Dayton G. Wiley and James N. Higdon, Wiley, Garwood, Hornbuckle & Higdon, Inc., San Antonio, for appellee.

## OPINION

NYE, Chief Justice.

This is an appeal of a third–party action by Texas Paper Stock Company against Corpus Christi Food City, Inc. The third–party action arose out of a lawsuit styled *Sylvester Paiz, et al v. Ann Arbor Baler Company, et al.* This third–party action brought by Texas Paper, was severed from the main case involving Paiz. In this later action, Texas Paper sought contractual indemnity predicated upon a written rental agreement. At trial, based on the jury's answer to a special issue, the court entered judgment unfavorably to Texas Paper, who now brings this appeal.

Paiz was an employee of Corpus Christi Food City, Inc. He was injured on January 11, 1976, while using a paper baler that was supplied to Food City by Texas Paper. The trial court rendered a judgment in that case against Texas Paper in the amount of $131,-723.91. Texas Paper then brought the present third–party action against Food City, seeking indemnity for the damages and attorney's fees that Texas Paper had paid as a result of the suit and judgment awarded against it in favor of Paiz.

The third–party action centered on an alleged written rental agreement covering the use of the paper baler at appellee Food City's store and containing an indemnity agreement. The alleged written agreement could not be found or produced at trial, so the testimony centered around the existence vel non of such written agreement at the time Paiz was injured. The jury found that there was no written rental agreement.

Appellant Texas Paper brings forward two points of error in point of error one, Texas Paper complains that the trial court erred in overruling its motion to disregard the jury's answer to the special issue in question because the evidence established conclusively and as a matter of law that Texas Paper and Food City had entered into a written rental agreement covering the paper baler in use on the Food City

premises before January 11, 1976. Texas Paper also attacks the jury's answer to this special issue on evidentiary grounds in its second point of error. Only if we sustain either of these two points of error would it be necessary for us to reach the question of the sufficiency of the indemnity clause to support indemnification raised by Food City's sole cross point of error.

As a general rule, the jury's findings on special issues may be disregarded if they are immaterial or if they have no support in the evidence. *Eubanks v. Winn*, 420 S.W.2d 698, 701 (Tex.1967); *Ramirez v. National Standard Ins. Co.*, 563 S.W.2d 837 (Tex.Civ.App.–Corpus Christi 1978, no writ). In determining a no–evidence point, all testimony must be considered in the light most favorable to the jury finding and every reasonable intendment deducible from the evidence is to be indulged in its favor. *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547, 550 (1962); *Newitt v. Camden Drilling Co.*, 552 S.W.2d 928, 931 (Tex.Civ.App.–Corpus Christi 1977, no writ). Where the jury's answers to the special issues have support in the evidence, the trial judge may not disregard the jury's answers. This is true even though the great weight and preponderance of the evidence might be to the contrary. *Gulf, Colorado & Santa Fe Railway Co. v. Deen*, 158 Tex. 466, 312 S.W.2d 933 (1958), *cert. denied*, 358 U.S. 874, 79 S.Ct. 111, 3 L.Ed.2d 105 (1958); *Newitt v. Camden Drilling Co.*, 552 S.W.2d 928, 931 (Tex.Civ.App.–Corpus Christi 1977, no writ); Rule 301, Texas Rules of Civil Procedure. Also, it must be remembered that a trial court may not properly disregard a jury's negative finding and substitute its own affirmative finding unless the evidence conclusively establishes such an opposite affirmative finding. See *Bond v. Otis Elevator Co.*, 388 S.W.2d 681, 685 (Tex.1965); Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 30 Tex.L.Rev. 361 (1960).

Keeping these rules in mind, we go directly to the relevant evidence concerning the special issue involved. C. G. Bragg was the manager of Texas Paper. He testified that Food City took over the operations of the store in November, 1974. Prior to that time, he explained that Texas Paper had supplied a paper baler to the previous operator of the store (then called SavMor). Food City continued the use of Texas Paper's baler when Food City took over operation of the store.

After Paiz' accident, which took place in January, 1976, a Mr. Parr of Food City and Bragg of Texas Paper executed a rental agreement covering a replacement paper baler. Bragg testified the printed matter contained in the second rental agreement was identical to the printed matter that he said was contained in the original contract which allegedly was signed by a Mr. Thompson on behalf of Food City in November of 1974. Bragg admitted that there was no written rental agreement to cover the paper baler in question during the period from July 17, 1973, to November, 1974. This was the period of time when the baler was in the possession of SavMor store (Food City's predecessor). Bragg said that this was because "we [Texas Paper] had not yet realized the necessity [of such an agreement]." Bragg testified that, although he could not locate the original agreement executed by the parties, he said he did remember signing the prior lost contract. It was theorized that if Texas Paper could determine when the printed contracts were first printed, it could help establish whether such a printed contract was in existence at the time Bragg said Thompson signed the printed contract. On cross–examination, Bragg admitted that he did not know where the records were which would indicate when Texas Paper had the first printed lease agreements prepared. He also admitted that a number of paper balers at Food City's several stores were operated without written lease agreements, at least for brief periods of time.

At the time Food City commenced operations, Bragg testified he had a "brief" five to six minute conversation with Mr. Thompson. At that time, Bragg explained "what our operating procedure was and asked his permission to continue on as we had on the

terms that we had agreed on and he said, 'Yes,' and that's about all that was said."

Paul Parr, manager of Food City as of November of 1974, testified that, while he had signed the April, 1976, rental agreement, he had not signed any prior agreement with Texas Paper. Parr stated that it was customary for store managers to sign agreements on behalf of the store.

John Thompson, who maintained residences in Corpus Christi and San Antonio, testified that he and his father had been in "Food City" enterprises since 1968, and that the Food City store in question, which was opened in November of 1974, was the first Food City store established in Corpus Christi. Thompson testified that the paper baler in question was on the store premises when Food City commenced its operations. He remembered that, during the transition period between ownership while he, Thompson, "was setting up the store," Bragg of Texas Paper met briefly with him to explain the costs involved in keeping the paper baler machine and the mechanics of its operation. At that time, Thompson and Bragg agreed to the cost of renting the machine. The meeting lasted no longer than five minutes. Thompson testified that, to his knowledge, Food City had not signed a lease agreement with Texas Paper. In response to a question asking Thompson if he had signed a written lease agreement at the time of the short meeting with Bragg, Thompson stated: "At that particular time I don't specifically remember signing any papers." Thompson said that to the best of his memory, the agreement to rent the machine was verbal and Bragg did not mention any indemnity requirement. Thompson also stated that he thought he would have remembered signing the agreement in question had it been placed before him because he had remembered the other facts and circumstances of that short meeting. Thompson testified that it was not until after January, 1976, that Bragg approached him to sign written leases upon equipment then located in the Food City stores.

■ Looking at the evidence in the light most favorable to the jury's answer, as we must, we hold that there is ample evidence in the record to support the jury's negative answer to the special issue in question. Texas Paper failed to conclusively establish as a matter of law, as they contend here, that before January 11, 1976, Food City and Texas Paper signed a written rental agreement covering the paper baler in use on January 11, 1976.

■ Appellant Texas Paper strenuously argues that the testimony of Thompson will not support the jury's negative finding as a matter of law. Texas Paper asks us to look at the uncontradicted testimony of Bragg which they contend is clear and positive concerning the signing of the prior lease. It contends that there are no circumstances in the evidence that tend to discredit or impeach his testimony. Therefore, conclusive effect must be given to Bragg's testimony, thus enabling the trial judge to disregard the jury's negative answer, citing 3 McDonald, Texas Civil Practice, § 11.28.6 (1970); *Collora v. Navarro*, 574 S.W.2d 65 (Tex.1978); *Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41 (Tex.1965).

Bragg's testimony is not "clear, direct and positive," nor is it so "internally devoid of inconsistencies and contradictions" or is it so "uncontradicted either by the testimony" or by "circumstances" that a directed verdict would have been proper. Texas Paper overlooks other testimony of Bragg which raises reasonable suspicion concerning the truth of his assertions. In summary, Bragg testified or the evidence was established that:

1) SavMor, Food City's predecessor, did not have a written lease covering the paper baler in question at the onset;

2) Texas Paper did not require written leases until the "necessity" of such leases became apparent (after the accident);

3) Bragg could not recall when Texas Paper first used the printed lease forms in question. He did not know where the records were which would

indicate when the printing of the lease forms commenced. Although he stated "it isn't possible that it occurred [having printed leases made] after the Food City changed from [SavMor]," at no time had Texas Paper obtained a single written lease from SavMor;

4) Bragg admitted that paper balers were initially installed in other Food City stores without written leases. Written leases were obtained at later dates;

5) There was a meeting with Thompson in November, 1974, which lasted only 5–6 minutes.

The record contains other positive and direct circumstantial evidence as well as the testimony by Thompson which challenges the credibility of Bragg's testimony. For instance, Thompson testified that Bragg approached him after Paiz' injury in January, 1976, to sign several leases on other balers which had been installed in their store but not covered by a lease at that time.

We hold that there is evidence, both direct and circumstantial, that is of probative force that will support the jury's answer to the special issue. The opposite answer to the special issue was not conclusively established by the evidence as a matter of law. The trial court properly denied Texas Paper's motion to disregard the jury's answer to special issue number one.

In point of error two, Texas Paper makes the following complaint:

"The trial court *erred in overruling appellant's motion to disregard the jury's answer to special issue number 1 and enter judgment on the verdict for appellant* because the jury's answer to special issue number 1 is so contrary to the great weight and preponderance of the evidence to be clearly wrong and unjust." (emphasis added)

This point of error complains of the trial court's action in rendering judgment on the verdict and its failure to disregard the jury's answer to the special issue and enter judgment for the appellant because of the state of the evidence. As such, the point of error actually preserves only a point of error challenging the legal sufficiency of the evidence. See *Chemical Cleaning, Inc. v. Chemical Cleaning & Equipment Service, Inc.,* 462 S.W.2d 276, 277 (Tex.1970); *Garza v. Alviar,* 395 S.W.2d 821, 824 (Tex.1965). It is well settled that the trial court may not disregard the jury's answer to a special issue which has support in the evidence even though the great weight and preponderance of the evidence is to the contrary. *Gulf, Colorado & Santa Fe Railway Co. v. Deen,* 158 Tex. 466, 312 S.W.2d 933 (Tex. 1958), *cert. denied,* 358 U.S. 874, 79 S.Ct. 111, 3 L.Ed.2d 105 (1958). The trial court's only course of action in the latter situation would be to grant a new trial. Even if we consider this to be a factually insufficient point, as appellant's argument now indicates, it would be overruled since we have also reviewed all of the evidence therein. *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

The judgment of the trial court is affirmed.