Joan K. COTTER, et al., Appellants,

v.

Foy MOORE and Cleo Moore, Appellees.

No. 2385cv.

Court of Appeals of Texas,
Corpus Christi.

April 22, 1982.

Thomas K. Robinson, Miller, Miller & Robinson, Gonzales, for appellants.

Roger M. Dreyer, Perkins, Dreyer & Rather, Gonzales, for appellees.

Before NYE, C. J., and BISSETT and YOUNG, JJ.

## OPINION

BISSETT, Justice.

This is an appeal from a judgment which granted the plaintiffs a permanent injunction for ingress and egress over land owned by the defendants. Foy and Cleo Moore [hereinafter "the appellees"] brought this action against Joan H. Cotter and others [hereinafter "the appellants"] claiming an implied easement across land owned by the appellants. Following a jury trial, the trial court rendered judgment granting the appellees a permanent injunction which enjoined the appellants from interfering with the appellees' use of roadways and a natural rock crossing located upon the appellants' land. The appellants, in this appeal, raise nine points of error.

Prior to 1956, Minnie Moore, the widow of Dyer Moore, owned a 315 acre tract of land located in Gonzales and Wilson Counties. In 1957, after the death of Minnie, the

Moore family partitioned the 315 acre tract into six parcels, hereinafter referred to as Tracts 1, 2, 3, 4, 5 and 6, respectively. Each parcel or tract abuts a county road on the north. The appellees acquired Tract 1 in the partition, and in 1961 and 1962, they purchased Tracts 3 and 4. From 1957 to 1978, they leased Tract 5 for cattle grazing purposes. In 1979, the appellants purchased Tract 5, which adjoins the appellees' Tract 4.

The Clear Fork Creek traverses Tracts 2 through 6 from the east to the west. This creek, according to the evidence adduced at trial, is quite wide and deep. There are no bridges or other crossings located on the appellees' Tracts 3 and 4 which would enable them to have access to the southern portion of their Tracts. On Tract 5, the appellants' Tract, there is a natural rock crossing which crosses the creek. On the north side of this crossing, there is a roadway which leads from the northern portion of the appellees' Tract 4 to the crossing itself; on the south side, there is also a roadway from the crossing which leads to the southern portion of Tract 4.

The following map, which is not drawn to scale, is incorporated herein for the purpose of showing the location of the six tracts of land involved in the partition, the creek, the involved roadways and the natural crossing.

Prior to and after the partition in 1957, the natural rock crossing and the road leading to and from it were used to cross the creek and gain access to the southern portion of the 315 acre tract. At the time of the partition and at the time the appellants acquired Tract 5, the roadways and crossing were well-defined, visible, and conspicuous, on the ground.

In 1980, the appellants erected a fence between Tracts 4 and 5 thereby preventing the appellees from using the natural rock crossing located on Tract 5. Thereafter, the appellees filed this suit claiming an implied easement across Tract 5 in order that they may travel from their land on the north side of the creek to their land on the south side of the creek.

The trial court submitted the following Special Issues and instructions to the jury:

"SPECIAL ISSUE NO. I

Do you find from a preponderance of the evidence That at the time plaintiffs acquired tracts 3 and 4 of the original Dyer Moore land, plaintiffs acquired an implied right of way easement over the land and rock crossing situated on the land designated as tract 5. Answer 'We do' or 'We do not.'

Answer *'We Do'*

You are instructed that when there is a partition of land by joint owners, each takes his portion of the real estate subject to such continuous, apparent, permanent and necessary easements as exist at the time of the partition, or had theretofore existed at the time of their common ancestor or grantor. Such easement need only be such that its use is necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made."

"If you have answered Special Issue No. I 'We do,' and only in such event, then answer the following Special Issue; otherwise, do not answer the following Special Issue."

"SPECIAL ISSUE NO. 2

Do you find from a preponderance of the evidence that the road on tract 5 leading to and over the rock crossing and from the rock crossing to tract 4 was apparent and plainly visible at the time defendants acquired tract 5?

Answer: 'It was plainly visible'

or

'It was not plainly visible.'

Answer: 'It was plainly visible.'

"SPECIAL ISSUE NO. 3

Do you find from a preponderance of the evidence that plaintiffs could not get to their land south of Clear Fork Creek without going over other people's land?

Answer: 'We do' or 'We do not.'

Answer: *'We do not.'*

The trial court, in its final judgment, expressly disregarded the jury's answer to Special Issue No. 3, and decreed that the appellees are the owners of an easement across the appellants' Tract 5. The appellants were forever enjoined from interfering with the appellees' use of the easement.

In their first two points of error, the appellants complain of the trial court's action in disregarding the jury's answer to Special Issue No. 3. We overrule these points. Special Issue No. 3 was immaterial to any issue in this case. The appellees never claimed that it was *impossible* to get to their land south of the creek without crossing other people's land. Obviously, the appellees could cross the creek by boat, ferry, building a bridge, or other means. If the jury had answered this Special Issue in the negative, such answer would have been clearly erroneous. Thus, the trial court correctly disregarded the jury's answer to this Special Issue as immaterial. *Texas Paper Stock Co. v. Corpus Christi Food City, Inc.,* 609 S.W.2d 259, 261 (Tex.Civ.App.—Corpus Christi 1980, no writ); *Ramirez v. National Standard Ins. Co.,* 563 S.W.2d 837, 838 (Tex. Civ.App.—Corpus Christi 1978, no writ).

In their third, fourth and fifth points of error, the appellants complain of Special Issue No. 1 and its accompanying instruction. The appellants contend that this issue should not have been submitted and that the trial court should have disregarded the jury's answer thereto for two reasons.

First, the appellants argue that the submission of Special Issue No. 1 was improper because it required the jury to make a finding of law. We disagree. A trial court may submit issues broadly with such explanatory instructions and definitions as are necessary to enable the jury to render a verdict. *Maples v. Nimitz,* 615 S.W.2d 690, 692 (Tex.1981); Rule 277, T.R. C.P. The special issue in question, although broad, was accompanied by an appropriate instruction. We therefore hold that the trial court did not err in submitting Special Issue No. 1 broadly.

The appellants next argue that the instruction under Special Issue No. 1 is an incorrect statement of the law of implied

easements. We do not agree. This instruction was apparently taken from *Zapata County v. Llanos*, 239 S.W.2d 699 (Tex.Civ. App.—San Antonio 1951, writ ref'd n. r. e.), wherein the court said:

> "where there is a partition of land by joint owners, each takes his portion of the real estate subject to such continuous, apparent, permanent and necessary easements as exist at the time of their common ancestor or grantor. 28 C.J.S., Easements, § 32, page 690. The necessity above referred to is not used in the strictest sense, but means only that such use is necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made. 28 C.J.S., Easements, § 33, page 692." *Id.* at 701–702.

In *Beck v. Mills*, 616 S.W.2d 353 (Tex.Civ. App.—Houston [14th Dist.] 1981, writ ref'd), the court was confronted with a fact situation similar to that of the case at bar. There, the parents of Arthur Beck and Doris Mills gave their three children certain portions of their land. Beck and Mills were given contiguous tracts. Access to Mills' land was by a roadway across Beck's land. This roadway was in use for over forty years prior to and at the time of the partition. Eleven years after the partition, Mills refused to permit Beck to use the roadway. Beck obtained an injunction prohibiting Mills from obstructing the roadway. The Court of Civil Appeals affirmed this judgment and held:

> "Where a roadway exists, running from one part of a tract of land to another, and it is apparent, in continuous use, and reasonably necessary to the enjoyment of that part of the land to which it provides ingress and egress, and if the owner of such a tract partitions his land conveying the parts to his children, each takes his part subject to the roadway as it existed at the time of the partition. One takes by implied grant and the other takes subject to such implied grant of easement. *Zapata County v. Llanos*, 239 S.W.2d 699 (Tex.Civ.App.—San Antonio 1951, writ ref'd n. r. e.)." *Id.* at 355.

In the case at bar, as noted above, there was evidence that the roadways and rock crossing on Tract 5 existed prior to the partition in 1957, and was in continuous use up until 1980. Further, there was evidence that the roadway was necessary for the convenient and comfortable enjoyment of Tract 4. We, therefore, hold that the trial court was correct in submitting Special Issue No. 1, and in not disregarding the jury's answer thereto. The appellants' third, fourth and fifth points of error are overruled.

In their eighth and ninth points of error, the appellants contend that the trial court should have submitted two requested special issues inquiring whether there was a "strict necessity" for the easement in 1957 and 1979. We disagree. A finding of "strict necessity" was immaterial to the instant case. *Beck v. Mills, supra*, at 355. The trial court was under a duty to submit only the ultimate or controlling issues in the case. *Perales v. Braslau's Furniture Co.*, 493 S.W.2d 638, 640 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n. r. e.). The requested issues were not ultimate or controlling issues. We hold that the trial court correctly refused to submit the appellants' requested special issues regarding "strict necessity." The appellants' eighth and ninth points of error are overruled.

We have carefully considered the appellants' remaining points of error. They are also overruled.

The judgment of the trial court is AFFIRMED.