cv2-061 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-92-061-CV




HARVEY VORWERK, DBA CEN-TEX PETROLEUM COMPANY,



 APPELLANT


vs.





GSI OIL & GAS, INC.; CHRISTOPHER J. WELLS; PETER W. WELLS;


JOHN H. WELLS; LUCY WELLS TIERNEY; JULIA W. NESOM;


 ELIZABETH BONNET MARKLAND; HARRIET BONNET MCGONIGLE;


ELEANOR H. BONNET; JOHN C. CULPEPPER, JR.;


JANE HENDERSON NORCROSS; JOHN B. HENDERSON, JR.;


PETER WELLS; SARAH WELLS; AGNES H. BEARD; CAROL WELLS;


HAMILTON MOORE BONNET TRUST; AND TOM H. WELLS, JR.,



 APPELLEES


 



FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT



NO. 22,148, HONORABLE CHARLES E. LANCE, JUDGE PRESIDING


 




 This appeal arises from a suit to terminate an oil and gas lease. Harvey Vorwerk,
dba Cen-Tex Petroleum Company, the lessee, appeals the judgment of the district court of Milam
County terminating the subject lease and awarding the lessor, GSI Oil & Gas, Inc. and others,
attorney's fees. Vorwerk also appeals the portion of the judgment awarding him damages on a
counterclaim for conversion. We will affirm the judgment in part, and reverse it in part.



THE CONTROVERSY


 In 1981, Vorwerk obtained rights as lessee of the Cen-Tex (Henderson) Lease (the
"lease"), which is the subject of the present controversy. Vorwerk subsequently drilled two wells
on the leased property and installed equipment necessary for production according to the terms
of the lease. 

 In 1986, disputes arose between Vorwerk and the original holders of the lease. The
original lessors demanded that Vorwerk surrender the lease, citing Vorwerk's failure to meet the
production requirements specified in the lease. (1) Following repeated refusals by Vorwerk to
surrender the lease, the original lessors filed an Affidavit of Forfeiture to terminate the lease with
Vorwerk in 1988. 

 The original lessors subsequently entered into a "top-lease" (2) arrangement with GSI
in 1989, which covered the same mineral interests covered by Vorwerk's lease. In August of
1989, GSI obtained control of the lease through the Texas Railroad Commission and took physical
possession of the leased property. GSI brought the present action to obtain a declaratory judgment
terminating the lease under the Texas Uniform Declaratory Judgments Act (3) (the "Act") and
seeking damages for lost production and damage to oil and gas reserves. Pursuant to the Act, GSI
also requested attorney's fees totaling $50,000. See § 37.009. Vorwerk filed a counterclaim
alleging that GSI unlawfully converted the equipment remaining on the leased property when it
obtained control of the lease in 1989 and requesting damages for the value of the equipment
allegedly converted. 

 Following a trial on the merits, the jury returned answers favorable to GSI on its
termination claim, but found the amount of attorney's fees due GSI was zero. The jury also
returned answers favorable to Vorwerk on his conversion claim. Based on these findings, the trial
court rendered judgment terminating the lease. Pursuant to GSI's motion to disregard jury
findings, the trial court disregarded the jury's finding of zero as to attorney's fees and awarded
GSI $45,000 in attorney's fees. The trial court also disregarded the jury's $39,580 valuation of
the equipment GSI converted and instead awarded Vorwerk $25,930 for the value of the converted
equipment. From this final judgment, Vorwerk appeals.



DISCUSSION


 Vorwerk asserts three points of error complaining of the trial court's judgment
terminating the lease and awarding GSI $45,000 in attorney's fees, and the court's order granting
GSI's motion to disregard the jury's findings concerning damages on Vorwerk's conversion claim.



1.  Termination of the Henderson Lease

 In his third point of error, Vorwerk contends that the trial court erroneously ruled
that the lease had expired. The jury found that Vorwerk failed to meet the sixty-day requirement
in the lease, (4) but also found that GSI repudiated the lease on July 30, 1987. (5) Pursuant to GSI's
motion to disregard jury findings, the trial court disregarded the jury's answer to Jury Question
No. 7 on repudiation and rendered judgment that the subject lease had expired based on the jury's
answer to Jury Question No. 1.

 Vorwerk essentially attacks the trial court's judgment on two fronts. First,
Vorwerk asserts that the form of Jury Question No. 1 is defective because it did not require the
jury to find that production or other operations ceased for sixty consecutive days. Because the
jury charge omitted this element of the lease's production requirement, Vorwerk contends that the
jury's answer was insufficient to terminate the lease. In the alternative, Vorwerk contends that
the trial court erred in disregarding the jury's finding that GSI repudiated the lease. Based on this
finding, Vorwerk argues, the trial court should not have rendered judgment terminating the lease
because the jury's finding of a sixty-day or longer production lapse did not indicate whether the
lapse occurred before or after the date GSI repudiated. (6) We conclude that Vorwerk's contentions
are without merit.

 Vorwerk's point of error essentially attacks the form of the question submitted to
the jury. However, the trial court has significant discretion in deciding whether explanatory terms
and definitions in jury instructions are sufficient to enable the jury to render a just verdict. K-Mart Corp. Store No. 7441 v. Trotti, 677 S.W.2d 632, 636 (Tex. App.--Houston [1st Dist.]), rev'd
on other grounds, 686 S.W.2d 593 (Tex. 1984). Furthermore, if the meaning of a term used in
the judge's instruction to the jury is clear from the evidence, no explanatory instruction is
necessary as long as the term is not a legal term needing definition. City of San Antonio v. Dunn,
796 S.W.2d 258, 263 (Tex. App.--San Antonio 1990, writ denied). Based on the evidence at trial,
we believe that the meaning of Jury Question No. 1 was clear, and that the jury understood the
terms of the question to require proof that the production ceased for sixty consecutive days. (7) 
Furthermore, while the question submitted to the jury did not expressly inquire into the time-frame
of the sixty-day production lapse, the evidence at trial clearly demonstrated that there was at least
one sixty-day lapse prior to July 30, 1987, the date that the jury found that GSI repudiated the
lease. (8)

 In order to reverse a case on an error in the jury charge, an appellant must show
harmful error. Boatland of Houston, Inc. v. Baily, 609 S.W.2d 743, 749-50 (Tex. 1980). In
determining harm, we must consider the entire record, including the parties' pleadings, the
evidence, and the entire charge. Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n,
710 S.W.2d 551, 555 (Tex. 1986). Despite the fact that the question submitted to the jury did
not expressly inquire into the time-frame of the cessation or whether the sixty-day lapse involved
consecutive days, we conclude that, based on the evidence and entire jury charge, there was no
error that was "reasonably calculated to cause and probably did cause rendition of an improper
judgment in the case." Tex. R. App. P. 81(b). Accordingly, we overrule Vorwerk's third point
of error.



2.  Attorney's Fees

 In his first point of error, Vorwerk questions the trial court's order granting GSI's
motion to disregard the jury's answer as to the reasonable amount of attorney's fees due GSI. In
answer to Jury Question No. 5, the jury found that GSI was not due any attorney's fees. (9) 
Pursuant to GSI's motion to disregard the jury's negative finding on attorney's fees, the trial court
ruled that there was no evidence supporting the jury's answer to Jury Question No. 5 and,
accordingly, disregarded the jury's answer. In place of the jury's answer, the trial court
substituted its own finding of $45,000 in reasonable attorney's fees based, according to the court,
on conclusive evidence in the record. Vorwerk contends that the trial court erred in disregarding
the jury's answer to Jury Question No. 5 and substituting its own finding of $45,000 in reasonable
attorney's fees. We agree.

 The trial court may properly disregard a jury finding only if the finding has no
support in the evidence or if it is immaterial. United States Fire Ins. Co. v. Twin City Concrete,
Inc., 684 S.W.2d 171, 173 (Tex. App.--Houston [14th Dist.] 1984, no writ). Furthermore, the
trial court may substitute its own finding for the jury's finding only to the extent that the
substituted finding is supported by conclusive evidence. Texas Paper Stock Co. v. Corpus Christi
Food City, Inc., 609 S.W.2d 259, 261 (Tex. Civ. App.--Corpus Christi 1980, no writ). In the
present case, therefore, even if the trial court were correct in ruling that there was no evidence
supporting the jury's finding of zero as to attorney's fees, GSI was left without a fact finding on
the quantitative amount of reasonable attorney's fees absent conclusive evidence establishing such
amount as a matter of law. GSI argues that the trial court's substituted finding of $45,000 in
attorney's fees was supported by conclusive evidence and, therefore, the trial court did not err in
substituting its own finding for the jury's finding. We disagree with GSI's contention.

 The only evidence presented at trial on the issue of attorney's fees was the expert
testimony of Mr. Lloyd Muennink, GSI's trial counsel. Vorwerk cross-examined Mr. Muennink,
but did not present any additional evidence on the issue. Under the facts of this case, expert
testimony on attorney's fees cannot be deemed conclusive. Coward v. Gateway Nat'l Bank, 525
S.W.2d 857, 858 (Tex. 1975). Mr. Muennink's testimony did nothing more than create a factual
issue for the trier of fact to determine. Smith v. Smith, 757 S.W.2d 422, 424-25 (Tex.
App.--Dallas 1988, writ denied). As a result, the jury was entitled to accept or reject, in part or
in whole, Mr. Muennink's expert testimony as to the amount of attorney's fees due GSI. We
conclude, therefore, that the trial court erred in substituting its finding of $45,000 in attorney's
fees for the jury's original finding, and that the trial court's action in disregarding the jury's
original finding left GSI without a finding to support an award of attorney's fees. (10) Accordingly,
we sustain Vorwerk's first point of error.



3.  Damages for Conversion

 Vorwerk's second point of error arises from his counterclaim for wrongful
conversion. The jury returned answers finding for Vorwerk on his counterclaim and valuing the
converted equipment at $39,580. (11) The jury's valuation of the equipment apparently covered the
equipment located at both wells on the lease. Pursuant to GSI's motion to disregard jury findings,
the trial court disregarded the jury's answer to Jury Question No. 11 and substituted its own
finding of $25,930, which was apparently the value of the equipment located at the first well only. 
The court concluded that there was no evidence supporting the conversion of equipment located
at the second well and, therefore, ordered that the jury's answer to Jury Question No. 11 be
replaced by a figure representing the value of the equipment at the first well. Vorwerk contends
that the trial court erred by granting GSI's motion to disregard. We agree.

 As we previously stated, the trial court can only disregard a jury finding if the
finding is unsupported by any evidence in the record. Thus, if the jury's finding is supported by
more than a "scintilla" of evidence in the record, the trial court must let the jury's finding stand
or order a new trial. Navarette v. Temple Indep. Sch. Dist., 706 S.W.2d 308, 309 (Tex. 1986). 
At trial, Vorwerk's expert witness testified that the value of the equipment located at both wells
on the lease was $39,580, which is identical to the jury's answer to Jury Question No. 11.
Furthermore, the evidence that Vorwerk presented to prove conversion did not distinguish
between the two wells. (12) We believe that this evidence constitutes more than a scintilla of
evidence supporting the jury's finding of $39,580 as the value of the equipment GSI converted. (13) 
Accordingly, we sustain Vorwerk's second point of error.



CONCLUSION


 We reverse that portion of the judgment awarding GSI and the other appellees
attorney's fees in the amount of $45,000, and render judgment that GSI and the other appellees
take nothing on his claim for attorney's fees. We also reverse that portion of the judgment that
awards Vorwerk damages in the amount of $25,930 for conversion of its property and render
judgment that Vorwerk recover damages for conversion in the amount of $39,580 from GSI and
the other appellees. We affirm the remainder of the judgment.



 

 Mack Kidd, Justice

[Before Justices Powers, Kidd and B. A. Smith]

Reversed and Rendered in Part; Affirmed in Part

Filed: April 14, 1993

[Do Not Publish]

1.   Paragraph 6 of the lease provided for automatic termination of the lease if the lessee
(Vorwerk) failed to either produce, drill, or rework the wells on the leased property for
60 consecutive days or more. 
2.   A "top lease" is a mineral rights lease made before a prior lease covering the same
interests has expired and, thus, overlaps the term of the former lease.
3.   Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West Supp. 1993).
4.   Jury Question No. 1:


Do you find from a preponderance of the evidence that at any time from April 1,
1986 through October 5, 1989, there was a period of 60 days or more, in which
there was neither production nor operations for drilling or reworking the CEN-TEX WELL No. 1 or No. 2 occurring on the CEN-TEX (HENDERSON) LEASE?


 ANSWER "YES" OR "NO"

 

 ANSWER: YES 
5.   Jury Question No. 7:


When, if at all, did the lessors repudiate the (Pemberton) Cen-Tex Henderson
lease?


"Repudiate" means to unequivocally communicate to the lessee by word or
conduct that the lease is no longer in force; and that the lessee no longer has any
rights under the lease.


Answer By Stating the earlier month, day, and year, if any:


 July 30, 1987 
6.   Vorwerk's argument relies on general principles of contract law. Once one party
repudiates a contract, the other party is released from fulfilling its obligations under the
contract. NRG Exploration, Inc. v. Rauch, 671 S.W.2d 649 (Tex. App.--Austin 1984, writ
ref'd n.r.e.).
7.   At trial, Vorwerk's own expert witness provided a detailed explanation of the sixty-day provision to the jury, including the fact that the sixty days had to be consecutive.
8.   At trial, GSI introduced reports by the Texas Railroad Commission showing no
production in the last half of 1986 and all of 1987. GSI also elicited testimony from
Vorwerk's own expert indicating that there was no production on the lease from June 12,
1986 to September 2, 1986, a period which exceeded the sixty-day limit.
9.   Jury Question No. 5:


What sum of money, if any, do you find is owed to GSI OIL & GAS, INC., by
CEN-TEX PETROLEUM COMPANY, for attorneys' fees incurred by the
necessity of hiring attorneys to pursue the subject causes of action?


 ANSWER $ 0 
10.   We believe that the appropriate course of action in this case would have been for
the trial court to grant a new trial. According to the record, GSI did not preserve this
option by either conditionally moving for a new trial or conditionally asserting the right
through cross-points in its appellate brief. Basin Operating Co. v. Valley Steel Prods., 620
S.W.2d 773, 776 (Tex. App.--Dallas 1981, writ ref'd n.r.e.).
11.   Jury Question No. 8:


Do you find by a preponderance of the evidence that GSI wrongfully exercised
dominion and control over Harvey Vorwerk's equipment and tubing on the
Henderson Lease?


 Answer "we do" or "we do not": we do 


 Jury Question No. 11:


What do you find to be the fair monetary value, if any, of the equipment and casing
on the Cen-Tex (Henderson) Lease?


 ANSWER: $ 39,580 
12.   The testimony of Mr. James Lampley, GSI's operations manager, indicated that
GSI refused to return any of Vorwerk's equipment, and did not distinguish between the
equipment at the two wells.
13.   GSI argues in its brief that both parties stipulated that Vorwerk's conversion claim
would exclude the equipment located at the second well. There is no evidence of this
stipulation in the record and, in any event, GSI did not object at trial when Vorwerk
introduced evidence concerning the second well. See Tex. R. Civ. P. 11.