**CITY OF BELLS, Texas, Appellant,**

v.

**GREATER TEXOMA UTILITY AUTHORITY and Kenneth T. Grantham, Appellees.**

**No. 05–89–00526–CV.**

Court of Appeals of Texas, Dallas.

March 19, 1990.

Rehearing Denied May 25, 1990.

Roger D. Sanders, D. Keith Harrison, Sherman, for appellant.

Ronald H. Clark, Sherman, for appellees.

Before ENOCH, C.J., and STEPHENS[1] and ASHWORTH[2], JJ.

## OPINION

ENOCH, Chief Justice.

The City of Bells (Bells) appeals the trial court's order granting summary judgment against it in a suit for declaratory judgment filed by the Greater Texoma Utility Authority (Texoma Utility) and landowner Kenneth T. Grantham. The trial court held that Bells's ordinance number 300–A, which restricts the location and size of solid waste disposal sites within the extraterrito-

1. The Honorable Bill J. Stephens, Justice, retired, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

2. The Honorable Clyde R. Ashworth, Justice, retired, Court of Appeals, Second District of Texas at Fort Worth, sitting by assignment.

rial jurisdiction and the city limits of Bells is not enforceable against Texoma Utility. The trial court also held that Bells's ordinance number 674 annexing the Grantham property into Bells is invalid and that, therefore, the Grantham property is not within Bells. Bells brings twenty points of error claiming that the trial court erred: (1) in denying Bells's motion for summary judgment because the dismissal of a prior case between the same parties precludes the present suit, and because Texoma Utility lacked standing to bring this suit; (2) in denying Bells's special exceptions, motion to clarify, and request for findings of fact and conclusions of law; (3) in granting Texoma Utility and Grantham's motion for summary judgment because the annexations leading out to the Grantham property and the annexation of the Grantham property are valid, that Bells's ordinances restricting the size and location of solid waste disposal sites within the city limits of Bells are valid and forbid Texoma Utility from establishing a landfill of the size proposed by Texoma Utility, that Grantham and Texoma Utility have waived or are estopped from denying the validity of the annexation of the Grantham property into Bells, and that as a matter of law, Bells was entitled to have a jury decide the issue of attorney fees. We agree with Bells that the annexations up to the Grantham property and the annexation of the Grantham property are valid. Although we do not find the current zoning ordinance valid, we also agree that Bells can forbid Texoma Utility from placing a 195.886 acre landfill

within Bells. Therefore, we reverse the judgment of the trial court.

## I. FACTS

This is a case arising out of a landfill location dispute. Texoma Utility is a public agency of the State of Texas formed as a conservation and reclamation district to provide services to member cities for such things as water, sewer services, and solid waste disposal. In 1981, Bells was a general law city with an approximate population of 830 persons and an extraterritorial jurisdiction of one-half mile.[3] Bells is *not* a member city of Texoma Utility.[4] Ken Grantham is the original owner of the site Texoma Utility selected for its landfill. Texoma Utility and Grantham want the landfill; Bells does not.

In late 1980, Texoma Utility began the process of locating a site for a landfill to serve the needs of its member cities. In early 1981, Texoma Utility approached Grantham and sought permission to enter his land and conduct tests for the suitability of the property as a landfill site. On April 29, 1981, Bells began its first series of annexations out to the Grantham tract. On that date, Bells annexed the properties of Knox, Goode, Addington, Lou Richards, Wilson, Darnell, Moir, and Westbrook.[5] On May 5, 1981, the Beene property was annexed into Bells. On May 26, 1981, Texoma Utility applied for a landfill permit with the Texas Department of Health for a landfill to be located on the Grantham property.[6] On June 8, 1981, Bells annexed the

---

**3.** Tex.Rev.Civ.Stat.Ann. art. 970a, § 3 (Vernon 1963) (repealed 1987), *now codified at* Tex.Local Gov't Code Ann. § 42.021 (Vernon 1988).

**4.** The member cities of Texoma Utility are Sherman, Denison, Gainesville, Gunter, Howe, Pottsboro, Muenster, Tioga, Tom Bean, Whitesboro, and Whitewright.

**5.** A map is reproduced in this opinion to show the sequence of annexations leading up to the Grantham tract and the eventual annexation of the Grantham tract. Texoma Utility and Grantham have argued that Grayson County Development Corporation owns the property that is otherwise reflected as Lou Richards property *and that, therefore, the property was never annexed into Bells.* The uncontested affidavit of Lou Richards establishes that he is the owner of

Grayson County Development Corporation and that he requested annexation and we glean from the record that the annexed property is carried in the city records under the name of Lou Richards and not Grayson County Development Corporation. Later in this opinion, we hold that procedural problems such as this were cured by the validating statute hereafter cited. For this case, we need not resolve whether the annexation request was properly made by the property owner.

**6.** The record is unclear whether the permit application was submitted on May 26 or June 12, 1981. Both dates are used by Texoma Utility and Grantham at different places in the record. For purposes of this opinion, the discrepancy has no legal significance.

properties of Chapman, Inc., Layne, and the remaining portions of the Westbrook tract.[7] Approximately a year later on May 10, 1982, Bells passed ordinance number 674 annexing the Grantham property.[8] Finally, on March 6, 1984, Bells passed ordinance number 300–A restricting the size and location of solid waste disposal sites within both the extraterritorial jurisdiction and the city limits of Bells. The notices for the city meetings at which all of these actions occurred were not in strict compliance with the requirements of article 970a, section 6, of the Texas Revised Civil Statutes. TEX.REV.CIV.STAT.ANN. art. 970a, § 6 (Vernon 1963) (repealed 1987), *now codified at* TEX.LOC.GOV'T.CODE ANN. §§ 43.-052–.053 (Vernon 1988).

## II. RELATED LITIGATION

On February 8, 1983, landowner Ken Grantham filed suit against Texoma Utility (suit no. 1). In that suit, Grantham charged Texoma Utility with fraud and slander of title and sought a declaratory judgment that Texoma Utility did not have the power to condemn the Grantham tract for the purposes of locating a landfill on that site. Grantham also sought a temporary restraining order and injunction preventing Texoma Utility from making any public representations that Texoma Utility had the power to condemn Grantham's property for use as a sanitary landfill. Grantham alleged that in early February or March 1981, Texoma Utility approached him seeking permission to enter his land for the purposes of taking core samples to test the suitability of the land for a landfill site. Grantham conditioned Texoma Utility's entry onto his land on Texoma Utility's willingness to pay his price of $2,000 per acre. Grantham alleges that Texoma Utility entered his land and, hence, represented

its willingness to pay that price. In an affidavit filed with the petition, Grantham stated that he was the owner of the Grantham tract and that the Grantham tract was located within Bells. On February 16, 1983, Texoma Utility responded to Grantham's petition. On May 27, 1983, Texoma Utility filed its first amended cross-action against Grantham as cross-defendant and Bells as third-party defendant. In that cross-action, Texoma Utility, for the first time, contested the annexation of the Grantham tract. Texoma Utility claimed that Bells had not complied with the applicable annexation statutes. This cross-action by Texoma Utility was dismissed by the trial court which ruled that Texoma Utility did not have standing to challenge the validity of the annexations by Bells. A motion for severance of the cross-action from the underlying suit was heard on March 30, 1987, and granted on April 14, 1987.[9] The order dismissing the claim became final on May 14, 1987. The significance of this fact will become apparent in this Court's discussion of the applicability of certain validating statutes.

On May 14, 1984, Grantham and Texoma Utility entered into a contract for the sale of the Grantham tract. The contract was between Grantham individually, the Patsy Freeman trust of which Grantham is one of the trustees, and Texoma Utility. Among other things, the special provisions of that contract provide: (1) that Grantham agree to dismiss with prejudice his damages suit (suit no. 1) against Texoma Utility; (2) that Texoma Utility dismiss without prejudice its pending condemnation suit against the tract; and (3) that *"[Grantham agree] to withdraw any permission given to the City of Bells for annexation of his property"* and cooperate with Texoma Utility in

---

7. The deposition testimony of Cindy Carr indicates that the annexations of April 29, May 5, and June 8, 1981, were made pursuant to the request of the property owners, but proper notices of the meetings at which these properties were annexed was never given.

8. Bells claims this ordinance was passed at the request of the property owner. As with every other issue in this case, the issue of Grantham's request to have the property annexed into Bells

is disputed. Because our opinion holds that the validating statutes referred to below cure procedural irregularities, we need not resolve this issue.

9. Only the first page of the order granting the severance is contained in the record. The trial court in the case at bar took judicial notice of the severance, and it appears to be undisputed that the order granting the severance was entered on April 14, 1987.

any lawsuits to obtain removal of the tract from within Bells. (Emphasis added.) The closing date set out in the contract states that "closing will occur on or before thirty (30) days after [Texoma Utility] obtains a final judgment (all appeals exhausted) authorizing [Texoma Utility] to legally operate the Property as a Class I sanitary landfill." The contract states:

> This removal of legal restrictions is intended to pertain to the finality of a judgment in two areas of existing litigation. The first is the existing appeal of the permit issued by the State Department of Health. The second is the finality of a judgment allowing [Texoma Utility] to operate said landfill despite allegations by Bells that the subject property is within Bells corporate limits. Under no circumstances shall closing be later than January 1, 1994.

Grantham and Texoma Utility then filed the present lawsuit on July 18, 1984, contesting the annexation of the Grantham tract and the validity of the ordinances restricting the size and location of landfills in and around Bells.

In yet a second, related lawsuit (suit no. 2), Texoma Utility brought a class action suit for declaratory judgment seeking to have its actions and its bond issuance declared constitutional. The underlying facts of that lawsuit are discussed in *City of Bells v. Greater Texoma Utility Authority*, 744 S.W.2d 636 (Tex.App.—Dallas 1987, no writ). That case, decided by this Court, dealt with certain issues presently of concern in this appeal. This Court held that strict compliance with the notice requirements of the Open Meetings Act [10] was mandatory and that since Texoma Utility had failed to comply with the notice provisions leading up to the meeting at which Texoma Utility authorized the filing of the declaratory judgment action, Texoma Utility's actions at that meeting, authorizing that law suit, were invalid. *City of Bells*, 744 S.W.2d at 636. Consequently, the judgment of the trial court was vacated, and the cause was dismissed.

### III. JURISDICTION

Bells argues in its first, sixth, and seventh points of error that the trial court erred in denying Bells's motion for summary judgment because the trial court had no jurisdiction over the case because the dismissal of suit no. 2 precludes the present action. The present suit was brought by Texoma Utility and Ken Grantham in the Fifteenth Judicial District Court in Grayson County seeking a declaratory judgment that certain ordinances passed by Bells were unenforceable and/or void. A district court has jurisdiction over declaratory judgment actions concerning the enforceability of ordinances. TEX.CIV.PRAC. & REM. CODE ANN. §§ 37.003–.004 (Vernon 1986). Bells claims that this Court's previous determination between these same parties is res judicata of the present suit. In suit no. 2, this Court wrote:

> The parties stipulated at trial that from the time of [Texoma Utility's] inception in November of 1979 up to April of 1984 [Texoma Utility] had never complied with the Open Meetings Act. Although not stipulated to, the record reflects that from May of 1984 to May of 1985 [Texoma Utility] was still failing to comply with the Open Meetings Act.

*City of Bells*, 744 S.W.2d at 639. This Court ruled that literal compliance was required under the Open Meetings Act and that actions taken at meetings held in violation of the Open Meetings Act are subject to judicial invalidation. *Id.* at 640, *citing Smith County v. Thornton*, 726 S.W.2d 2, 2–3 (Tex.1986). We stated:

> The notice of the April 1985 meeting in which [Texoma Utility] voted to authorize this lawsuit to be filed did not comply with the Open Meetings Act. Compliance with the Open Meetings Act is mandatory, and actions taken by a governmental body in violation of the Act are subject to judicial invalidation. *Lower Colorado River Authority v. City of San Marcos*, 523 S.W.2d 641, 646 (Tex. 1975); *Garcia v. City of Kingsville*, 641 S.W.2d 339, 341 (Tex.App.—Corpus Christi 1982, no writ). We hold that

---

**10.** TEX.REV.CIV.STAT.ANN. art. 6252–17 (Vernon Supp.1990).

[Texoma Utility's] actions authorizing this lawsuit were invalid and we vacate the judgment of the trial court and dismiss the cause.

*Id.* at 640. In the case at bar, Bells points out that the meeting at which the present lawsuit was authorized was held during the period of time when this Court had stated that Texoma Utility was not in compliance with the Open Meetings Act. Therefore, Bells urges us to vacate the judgment of the trial court and dismiss this case. Texoma Utility does not dispute that the original meeting at which the present suit was authorized was not held in compliance with the Open Meetings Act. Texoma Utility claims instead that Bells failed to properly raise this issue at the trial court level or, alternatively, that Texoma Utility's subsequent ratification of its prior voidable act, at a meeting held in compliance with the Open Meetings Act, retroactively validates the filing of the present suit. Texoma Utility also points out that even if Bells is correct, we cannot dismiss the suit because Grantham, as a private citizen, is not subject to the requirements of the Open Meetings Act.

It is undisputed that in February 1988, Texoma Utility held a meeting in compliance with the Open Meetings Act at which it reauthorized the present suit. Although it is clear that ratification does not have a retroactive effect, it is equally clear that Texoma Utility can meet and again authorize actions which were previously authorized at an invalid meeting. *See Smith County,* 726 S.W.2d at 3 (stating that should the Commissioners Court properly comply with the Open Meetings Act, it may authorize the same action previously held invalid); *Lower Colorado River Authority v. San Marcos,* 523 S.W.2d 641, 646–47 (Tex.1975) (same action reauthorized at valid meeting, held to be proper). Bells argues that since such a ratification cannot be given retroactive effect, the filing date of the present action should be February 10, 1988, the date of Texoma Utility's valid meeting authorizing Texoma Utility's participation in the present suit. Bells cites no authority which would allow this Court to alter a filing date. This argument also fails to address the presence of Grantham in this lawsuit. Bells's first, sixth, and seventh points of error are overruled.

## IV. STANDING

■ In its second, eighth, ninth, and fourteenth points of error, Bells attacks Texoma Utility and Grantham's standing to bring this suit. The general rule is that standing consists of some interest peculiar to the person or entity individually. *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984). One has standing to sue if: (1) he has sustained, or is immediately in danger of sustaining, some direct injury as a result of the wrongful act of which he complains; (2) he has a direct relationship between the alleged injury and claim sought to be adjudicated; (3) he has a personal stake in the controversy; (4) the challenged action has caused the plaintiff some injury in fact, either economic, recreational, environmental, or otherwise; or (5) he is an appropriate party to assert the public's interest in the matter as well as his own interest. *Billy B., Inc. v. Board of Trustees,* 717 S.W.2d 156, 158 (Tex.App.—Houston [1st Dist.] 1986, no writ); *Housing Authority v. State ex rel. Velasquez,* 539 S.W.2d 911, 913–14 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). Bells contends that because Texoma Utility was dismissed from suit no. 1 for lack of standing, it should also be dismissed from the present lawsuit. We disagree. Lack of standing in one lawsuit does not indicate lack of standing in a second lawsuit. Here Texoma Utility has signed a contract to purchase the Grantham tract. The ordinances passed by Bells limit the use of that land. Clearly, both Grantham and Texoma Utility have an interest in the outcome of this litigation. We hold that Texoma Utility and Grantham have standing to bring this suit.

■ On a related standing issue, Bells argues that because Texoma Utility failed to comply with the Open Meetings Act, it does not legally exist for the purpose of this suit. This argument focuses on Texoma Utility's capacity to sue. Bells cites *Stinson v. King,* 83 S.W.2d 398 (Tex.Civ. App.—Dallas 1935, writ dism'd), for the

proposition that "suits can be maintained by and against only parties having a legal existence." *Stinson*, 83 S.W.2d at 399. Assuming that Bells properly raised this issue at the trial court level, it is undisputed that Texoma Utility was established by the legislature. It is also uncontroverted that Texoma Utility held a meeting in February of 1988 authorizing its participation in this suit, and that such meeting was in compliance with the Open Meetings Act. We have already held that Texoma Utility has standing to bring this suit, and since Texoma Utility has a legal existence, we hold that it has capacity to bring this suit. Bells's second, eighth, ninth, and fourteenth points of error are overruled.

## V. SPECIAL EXCEPTIONS, MOTION TO CLARIFY, FINDINGS OF FACT

In points of error three through five, Bells argues that the trial court erred when it denied Bells's special exceptions, motion to clarify, and request for findings of fact and conclusions of law. In these points of error, Bells claims that it was not given adequate notice of the matters which would be considered as grounds for summary judgment. Alternatively, Bells claims that once the summary judgment was entered, Bells was not given proper notice of the basis for that judgment.

In Texas, it is well settled that a trial court should not make findings of fact and conclusions of law in a summary judgment case. *Cotton v. Ratholes, Inc.*, 699 S.W.2d 203, 204 (Tex.1985). As for the motion to clarify, contrary to Bells's assertion, the record demonstrates that the trial court ordered clarification. These points of error, therefore, are without merit.

▉ Bells urges that the trial court erred in denying its special exceptions set out in paragraphs I(A) through (C) of its response to Texoma Utility and Grantham's motion for summary judgment. Bells cites no authority which would indicate that the trial court abused its discretion; however, we will address Bells's contention. A trial court's overruling of special exceptions will not be reversed in the absence of a showing of abuse of "the large measure of discretion" which is vested in the court in passing upon the special exceptions. *Waggener v. Waggener*, 460 S.W.2d 251, 254 (Tex.Civ.App.—Dallas 1970, no writ); *Arrow Chemical Corp. v. Anderson*, 386 S.W.2d 309, 316 (Tex.Civ.App.—Dallas 1965, writ ref'd n.r.e.). Pleadings are deemed sufficient "if they give the opposing party fair notice of the proof which will be introduced against it at trial." *Newitt v. Camden Drilling Co.*, 552 S.W.2d 928, 933 (Tex.Civ.App.—Corpus Christi 1977, no writ).

In special exception I(A), Bells challenges the three alternative grounds asserted in Texoma Utility and Grantham's motion for holding the annexation of the Grantham property invalid. Alternative pleadings are permitted under the Texas Rules of Civil Procedure. TEX.R.CIV.P. 48. In special exceptions I(B) and (C), Bells attacks paragraph three of Texoma Utility and Grantham's motion for summary judgment. Paragraph three claims that certain ordinances restricting the size and location of landfills within Bells were not passed in compliance with the notice and hearing requirements of "V.A.C.S. 1011a etc." Although the quoted language is not an exact citation to the specific statute in question, it does generally refer to the zoning statutes as they existed prior to codification in the Local Government Code. Any uncertainty as to the exact nature of the claim is cleared up by paragraph 22 of Texoma Utility and Grantham's motion for summary judgment. Paragraph 22 cites and quotes the notice and hearing requirements in question and the particular ordinance being attacked. Bells's points of error three, four, and five are overruled.

## VI. VALIDITY OF THE ANNEXATIONS

In point of error fifteen, Bells claims the trial court erred when it granted Texoma Utility and Grantham's motion for summary judgment because the annexations leading out to the Grantham tract and the annexation of the Grantham tract itself are valid. There are several possible grounds on which the trial court may have conclud-

ed that the annexations leading out to and including the annexation of the Grantham tract were void. Texoma Utility and Grantham assert that Bells failed to comply with any of the annexation statutes in effect at the time of the purported annexations. *See* TEX.REV.CIV.STAT.ANN. arts. 965, 970a, 970b, 974, & 974g (Vernon 1963) (repealed 1987), *now codified at* TEX.LOCAL GOV'T.CODE ANN. §§ 43.026, 43.051, 41.003, 43.024, 43.-028 (Vernon 1988). Texoma Utility and Grantham also contend that the annexations leading out to the Grantham tract are void because they extend beyond the extraterritorial jurisdiction of Bells. Texoma Utility and Grantham further assert that the series of annexations leading out to the Grantham tract left certain gaps of unannexed land, thus causing the whole stem of annexations to be defective. They argue that under the facts of this case, if the annexations leading out to the Grantham tract are invalid, the annexation of the Grantham tract itself cannot be upheld. Bells responds that it has substantially complied with the annexation statutes and, in any event, certain validating statutes confirm the series of annexations leading out to the Grantham tract as well as the annexation of the Grantham tract itself.

### A. The First Set of Annexations Leading Out to the Grantham Tract

■ It is undisputed that Bells failed to strictly comply with the notice requirements for any of the annexations involved in this case. Bells failed to publish any notices in a newspaper having general circulation in the city and the area proposed to be annexed as required by statute. TEX. REV.CIV.STAT.ANN. art. 970a, § 6 (Vernon 1963) (repealed 1987), *now codified at* TEX. LOCAL GOV'T.CODE ANN. § 43.052 (Vernon

1988). Bells argues that the annexations, although not passed in strict compliance with the annexation statutes, were passed in substantial compliance with those statutes. However, full compliance with the statutory requirements of notice and hearing are necessary to the validity of the annexation ordinance. *Fuller Springs v. State ex rel. City of Lufkin*, 513 S.W.2d 17, 19 (Tex.1974); *Knapp v. City of El Paso*, 586 S.W.2d 216, 218 (Tex.Civ.App.— El Paso 1979, writ ref'd n.r.e.). The ordinances annexing the properties leading out to the Grantham tract were not valid when originally enacted. We must now determine if such annexations have been validated notwithstanding the procedural infirmities.

■ The Texas Legislature has regularly enacted validating statutes which provide in very broad language that the boundary lines of certain cities and towns, including both boundary lines covered by the original incorporation proceedings and by any subsequent annexations are validated.[11] Bells argues that three different statutes validate the annexations, involved in this case. We will consider only former article 974d–34 of the Texas Revised Civil Statutes.[12] The pertinent sections of article 974d–34 are as follows:

SECTION 1. APPLICATION. This Act applies to any incorporated city, town, or village having a population of 200 or more, according to the most recent federal census, that annexed or attempted to annex territory before January 1, 1983.

SECTION 2. PROCEEDINGS VALIDATED. (a) Except as provided by Subsection (c) of this section, the governmental acts and proceedings of a city, town,

---

**11.** Former articles 974d–11 to 974d–35 of the Texas Revised Civil Statutes have all been repealed. *See* Act of August 31, 1987, ch. 149, § 49, 1987 TEX.GEN.LAWS 707, 1306. Section 50(a) of the 1987 repealing act provides that repeal of a validating law does not remove, void, or otherwise affect in any manner a validation under the repealed law. The validation is preserved and continues to have the same effect that it would have if the law were not repealed.

**12.** Act of June 19, 1983, ch. 848, 1983 TEX.GEN. LAWS 4815, *repealed by* Act of August 31, 1987, ch. 149, § 49, 1987 TEX.GEN.LAWS 707, 1306. Section 50(a) of the repealing legislation makes clear that former article 974d–34 is executed law and that the repeal of former article 974d–34 does not affect the validations which occurred under that law. All references in the text of this opinion to any validation statute will be made to the Texas Revised Civil Statutes with a footnote reference to the Texas General Laws.

or village covered by this Act relating to the annexation or attempted annexation of territory by the city, town, or village are validated as of the dates they occurred. The acts and proceedings may not be held invalid because they were not performed in accordance with law.

(b) The governmental acts and proceedings of the city, town, or village occurring since the annexation and before the effective date of this Act are validated as of the dates they occurred.

(c) This act does not validate governmental acts or proceedings relating to a city's, town's, or village's annexation or attempted annexation of:

(1) territory in the extraterritorial jurisdiction of another city, town, or village without the consent of that city, town, or village in violation of the Municipal Annexation Act (Article 970a, Vernon's Texas Civil Statutes); or

(2) an area extending from the coastline into the Gulf of Mexico.

SECTION 3. EFFECT OF LITIGATION. This act does not apply to any matter that on the effective date of this Act:

(1) is involved in litigation if the litigation ultimately results in the matter being held invalid by a final judgment of a court of competent jurisdiction; or

(2) has been held invalid by a final judgment of a court of competent jurisdiction.

It is clear that the intention of the legislature in the enactment of article 974d–34 was to validate governmental acts and proceedings of cities pertaining to annexations or attempted annexations. The act expressly states that such proceedings "may not be held invalid because they were not performed in accordance with law." Section 2(a) of the act refers to subsection (c) for the only two exceptions to validation. The land annexed by Bells is not subject to either of these exceptions; therefore, the annexations must be upheld.

Texoma Utility and Grantham focus on section 3 of article 974d–34 and argue that the validation statute does not apply because the validity of the annexations has been attacked in various lawsuits since May 27, 1983. The record shows that the only litigation attacking the annexation ordinances on the effective date of article 974d–34 was suit no. 1. In that suit, Texoma Utility filed a cross-action against Grantham and Bells contesting the validity of the annexations. The cross-action was dismissed and a severance granted. Therefore, the only litigation in progress on the effective date of article 974d–34 did *not* result in the annexation ordinances being held invalid. Therefore, section 3 does not prevent the application of article 974d–34 to these annexations.

█ Texoma Utility and Grantham also assert that the trial court's summary judgment is correct because the annexations leading up to Bells's annexation of the Grantham tract extended beyond the extraterritorial jurisdiction of Bells. At the time of the first set of annexations leading out to the Grantham tract, Bells was not permitted to annex land outside its extraterritorial jurisdiction. TEX.REV.CIV.STAT.ANN. art. 970a, § 3 (Vernon 1963) (repealed 1987), *now codified at* TEX.LOCAL GOV'T. CODE ANN. § 42.021 (Vernon 1988). It is undisputed that the first series of annexations extended beyond the one-half mile limit on Bells's extraterritorial jurisdiction. Texoma Utility and Grantham cite cases that say such municipal actions are not validated by validating statutes. However, the cases cited were based on different validating statutes.

In *City of Waco v. City of McGregor,* 523 S.W.2d 649 (Tex.1975), the Texas Supreme Court interpreted article 974d–12 of the Texas Revised Civil Statutes,[13] a predecessor of article 974d–34. The court determined that, despite the broad language of article 974d–12, the legislature did not intend to validate and did not validate the annexation of either noncontiguous or

---

**13.** Act of June 18, 1967, ch. 747, 1967 TEX.GEN. LAWS 2023, *repealed by* Act of April 30, 1987, ch. 149, § 49, 1987 TEX.GEN.LAWS 707, 1306.

nonadjacent territory. *City of Waco*, 523 S.W.2d at 654. It stated, "[I]n view of the repeated requirement of adjacency in the statutes, we do not believe that the validating statutes should be construed to a different effect in the absence of specific and express provisions." *Id.* at 653.

However, the Texas Supreme Court in *City of Waco* also held that the legislature has the power to validate attempted annexations such as those at issue in this case and that whether the validating statute does validate these kinds of annexations is a matter of statutory interpretation. In a comment of note, the court stated:

> The outcome of this case thus depends on the applicability of the above validating act. The question is not one of the power of the legislature—*we do not doubt that the legislature could validate an attempted annexation such as this.* Rather the question here is one of construction of the validation act, whether the legislature intended to validate attempted annexations such as the one before us. TEX.REV.CIV.STAT.ANN. art. 10, subd. 6; *Calvert v. Texas Pipe Line Co.*, Tex., 517 S.W.2d 777 (1975).

*City of Waco*, 523 S.W.2d at 652 (emphasis added); *see also Perkins v. State*, 367 S.W.2d 140, 145 (Tex.1963).

In response to the *City of Waco* decision, the legislature enacted section 4(a) of article 974d–28, which states:

> The original boundary lines of each municipality covered by the Act and any extensions of those boundaries adopted before January 1, 1975, are *validated in all respects, even though the action adopting the original boundaries or an extension of them was not in accordance with law.*

(Emphasis added.) In *City of Colony v. City of Frisco*, 686 S.W.2d 379 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.), the Fort Worth Court considered the effect of article 974d–28 on certain annexations made by the City of Frisco. As in the case before us, the annexations in the *Frisco* case extended beyond the extraterritorial jurisdiction of the City of Frisco. *City of Frisco*, 686 S.W.2d at 380. That court held that article 974d–28 validated the annexations.[14] *Id.* at 381.

Similar to article 974d–28, section 4(a), article 974d–34, section 2(a) states that the annexations involved in this case are valid as of the date they occurred and cannot be held invalid because they were not "performed in accordance with the law." The annexations leading out to the Grantham tract are valid.

**B. Annexation of the Grantham Tract**

Texoma Utility and Grantham argue that the annexation of the Grantham tract is void because: (1) Bells did not comply with the proper annexation procedure; (2) the annexation of the Grantham tract annexed land which was noncontiguous and nonadjacent to Bells; and (3) Ken Grantham Ford, Inc., the owner of the tract, did not consent to the annexation. Since we have already found that the annexations leading out to the Grantham tract are valid, and because article 974d–34 cures any procedural anomalies in the annexation process of the Grantham tract, the first two arguments are without merit.

▮ Concerning Texoma Utility and Grantham's contention that Grantham did not consent to annexation, the facts indicate that Grantham, through his attorney

---

**14.** The *City of Frisco* court also reviewed section 4(b) of article 974d–28 which states:

> Without limiting the generality of subsection (a) of this section, it is expressly provided that an attempted annexation that occurred before January 1, 1975, may not be held invalid because it did not comply with the Municipal Annexation Act, as amended (article 970a, Vernon's Texas Civil Statutes), or any other applicable law, or because the territory the municipality attempted to annex was not contiguous or adjacent to the then existing

boundaries of the municipality, or because the municipality was not petitioned for annexation by the owners or residents of the annexed territory.

Our study of this section reveals that it is no more than a listing of types of annexation errors intended to be validated and not in any way an expansion or limitation of the broad language of section 4(a), the section which is substantially similar to article 974d–34, section (2)(a), the section governing this case.

Michael Collins, *petitioned* Bells for annexation. Texoma Utility and Grantham argue that although Grantham may have consented to the annexation, Ken Grantham Ford, Inc. did not. There is no evidence in the record indicating that Ken Grantham Ford, Inc. either did or did not consent to the annexation. The motion of Texoma Utility and Grantham for summary judgment contains no allegation that Ken Grantham Ford, Inc. did not consent to the annexation. As this motion attacks the annexation only on the basis that the procedural requirements of the annexation statutes have not been met, article 974d–34 disposes of this issue. The annexation of the Grantham tract has been validated. Bells's point of error fifteen is sustained.

## VII. ORDINANCES RESTRICTING THE SIZE AND LOCATION OF LANDFILLS

█ In point of error sixteen, Bells argues that the trial court erred in granting Texoma Utility and Grantham's motion for summary judgment because, as a matter of law, the ordinances restricting the location of landfills are valid. It is undisputed that Bells failed to comply with the notice and hearing requirements of the Texas zoning ordinance statutes when it enacted ordinance 300–A.[15] City of Bells, Tex., Ordinance 300–A (March 6, 1984). Bells argues that it was not required to comply with the notice and hearing requirements in adopting ordinance 300–A. It urges that ordinance 300–A was adopted pursuant to former article 4477–7(c), section 34(b) of the Texas Revised Civil Statutes, which does not mandate any notice or hearing requirements. Act of Sept. 1, 1983, ch. 934, 1983 TEX.GEN.LAWS 5125, *amended by* Act of Aug. 26, 1985, ch. 887, § 2, 1985 TEX.GEN. LAWS 3012, 3013, *amended by* Act of Aug. 31, 1987, ch. 264, §§ 1 & 2, 1987 TEX.GEN. LAWS 1597, *amended by* Act of June 19, 1987, ch. 632, § 3, 1989 TEX.GEN.LAWS 2421, 2422, *repealed by* Act of Sept. 1, 1989, ch.

678, § 1, 1989 TEX.GEN.LAWS 2230, 3165, *now codified at* TEX.HEALTH & SAFETY CODE ANN. § 363.112 (Vernon 1990). Section 34(b) provides that:

> To prohibit the processing or disposal of solid waste in certain areas within the boundaries of the city or county, the governing body of a city or county shall adopt an ordinance or order that specifically designates the area of the city or county in which the disposal of solid waste will not be prohibited, unless the city or county has adopted solid waste management plans approved by the department pursuant to Subsection (s), Section 7, of this Act.

This section required Bells to adopt an ordinance designating areas where the disposal of waste will not be prohibited. It does not waive any notice or hearing requirements imposed by Texas law. If there is any doubt as to whether or not Bells needed to publish a notice of a meeting at which the adoption of this ordinance could be discussed and voted on, that doubt has been resolved by the codification of article 4477–7(c) in section 363.112 of the Texas Health and Safety Code. Section 363.112 requires the proposed ordinance to be published in a newspaper of general circulation for two consecutive weeks prior to adoption. An ordinance enacted without complying with the requirements of publication and notice is invalid. *Bolton v. Sparks,* 362 S.W.2d 946, 950 (Tex.1962). Bells's ordinance 300–A is invalid and cannot be used to prohibit Texoma Utility from locating a landfill on the Grantham tract.[16] Point of error sixteen is overruled.

█ In points of error seventeen through nineteen, Bells argues that Texoma Utility does not have the authority to invade the extraterritorial jurisdiction or the city limits of Bells and place a landfill on the Grantham tract. As previously stated, Texoma Utility is a conservation and reclamation district created by the legisla-

---

**15.** TEX.REV.CIV.STAT.ANN. arts. 1011a, 1011d, 1011e, & 1011f (Vernon 1963) (repealed 1987), *now codified at* TEX.LOCAL GOV'T.CODE ANN. §§ 211.001–.007 (Vernon 1988).

**16.** City of Bell's ordinance 300, passed on May 5, 1981, prohibits the location of any landfill within the city limits of the City of Bells. This ordinance is prohibited under section 363.-112(a) of the Texas Health and Safety Code.

ture in 1979. Act of May 2, 1979, ch. 97, 1979 Tᴇx.Gᴇɴ.Lᴀᴡs 177, *amended by* Act of June 17, 1983, ch. 398, 1983 Tᴇx.Gᴇɴ.Lᴀᴡs 2160 (the District Act). Bells claims that certain provisions of the District Act limit the authority of Texoma Utility to place a landfill on the Grantham tract. Texoma Utility argues that the District Act gives Texoma Utility the authority to use the Grantham tract as a solid waste disposal site and that Bells cannot utilize its land use control authority to frustrate a special purpose political subdivision from carrying out its legislative mandate.

Section 3 of the District Act sets out the powers and duties of Texoma Utility and provides:

Sec. 3. (a) Except as otherwise provided in this Act, the district shall have and may exercise all the rights, powers, privileges, authority, and functions conferred and imposed by the general laws of this state applicable to municipal utility districts created under Article XVI, Section 59, of the Texas Constitution, including without limitation those conferred by Chapter 54, Water Code, as amended, and all of the powers conferred by Chapter 30 of the Water Code. All these general laws are adopted and incorporated by reference with the same effect as if incorporated in full by this Act, but *to the extent that the provisions of any of those general laws may be in conflict or inconsistent with the provisions of this Act, the provisions of this Act prevail.*

(b) The district has the following rights, powers, privileges, and functions:

(1) the authority to operate, control, purchase, construct, lease, or acquire property, works, facilities, and improvements, whether previously existing or to be made, constructed, or acquired, *within or without the boundaries of the district that its governing body finds necessary or required to carry out the authority granted by this Act and the general laws;*

(2) the authority to enter into contracts with persons, public or private corporations, municipal corporations, political subdivisions, agencies, departments, or instrumentalities of the state or feder-

al government, or others, on terms and conditions the board of directors deem desirable, fair, and advantageous:

(A) for the purchase or sale or both of raw or treated water;

(B) for the transportation, treatment, and disposal of its domestic, industrial, or communal wastes or the transportation, treatment, and disposal of domestic, industrial, or communal wastes of others, to include the purposes of Chapter 30, Water Code, the provisions of which are expressly made applicable to the district;

\* \* \* \* \* \*

(7) as to area within Grayson County, the district may establish standard specifications for facilities that are designed or constructed to provide (A) storage, treatment, or transportation of water for domestic, municipal, or industrial purposes so as to ensure that such facilities are adequate in design to serve the needs of the inhabitants of the area, or (B) the collection, treatment, and disposal of sewage, or (C) for the disposal of solid wastes, any one or all, *but in no event shall such specifications be made applicable to that area included at the time of promulgation within the corporate or extraterritorial boundaries of any incorporated municipality without the approval of the governing body of such municipality.* Before the specifications become final, the board shall hold a public hearing, after giving notice to the Texas Department of Water Resources and the Texas Department of Health or their successors, and the publication of notice in a newspaper of general circulation in the area one time at least 10 days before the date of the hearing in order that any interested party may present evidence for or against any proposed specifications. Appeal from an order adopting standard specifications may be made to the district court of Grayson County, and the substantial evidence rule shall apply. The district shall be entitled to seek injunctive relief against the construction of any facilities, including extensions to any existing facilities, or if

construction has commenced after the promulgation of the specifications to seek injunctive relief against the operation of the facilities that do not meet the standard specifications it has approved. The standard specifications, when approved, shall be filed with the Texas Department of Water Resources.

(Emphasis added.) Texoma Utility claims that section 3(b)(1) gives it the authority to purchase the Grantham tract and operate a landfill at that location. We do not read this section so broadly. Section 3(b)(1) gives Texoma Utility the power to operate a landfill within or without the geographical boundaries of the district, but it does not give Texoma Utility the authority to invade the city limits of a nonmember city and locate a landfill on that site. We understand the language of section 3(b)(1) to mean that in carrying on its authorized duties, Texoma Utility is not limited to the area within its geographical boundaries but rather may locate and operate facilities at sites not within the geographic boundaries of the district. It should be readily apparent that authority to locate an activity outside of one's jurisdiction is not unlimited authority to locate the activity inside someone else's jurisdiction.

Chapters 30 and 54 of the Texas Water Code, which are expressly made applicable to Texoma Utility, are not to the contrary. Nowhere in chapters 30 or 54 of the Water Code is Texoma Utility given express authority to locate a landfill within the city limits or the extraterritorial jurisdiction of a nonmember city. Texoma Utility additionally cites section 54.201 of the Texas Water Code for the proposition that it can purchase land and operate a landfill inside or outside its geographical boundaries. TEX.WATER CODE ANN. § 54.201 (Vernon Supp.1990). Section 30.033 of the Water Code, in language similar to that of section 54.201, also authorizes the district to purchase and operate a facility "inside or outside the boundaries of the district." TEX. WATER CODE ANN. § 30.033 (Vernon 1988). We agree with Texoma Utility that it can go beyond its boundaries to locate and operate a facility necessary to carry out its purposes. However, again these statutes do not provide the unilateral authority to locate a facility within either the extraterritorial jurisdiction or city limits of Bells.

We are guided in our interpretation of these code provisions by various sections of the Solid Waste Disposal Act and by section 3(b)(7) of the District Act. Section 361.166 of the Solid Waste Disposal Act sets out the conditions under which a municipality may not restrict the operation of a solid waste facility. TEX.HEALTH & SAFETY CODE ANN. § 361.166 (Vernon 1990). In order for a municipality to be prevented from restricting the operation of a facility, the facility must have been in existence at the time the municipality was incorporated or at the time the land on which the facility is located was annexed and the facility must be operating in substantial compliance with the applicable regulations. Neither of these two conditions exist in the present case. Here, there is no landfill and certainly no landfill operating in compliance with any set standards or regulations. Under these circumstances, Bells can restrict the use or operation of a solid waste facility.[17]

Section 3(b)(7) of the District Act also limits Texoma Utility's authority to operate a facility within the corporate or extraterritorial boundaries of a city. The district is given the authority to establish "specifications for facilities that are designed or con-

---

17. *See* TEX.REV.CIV.STAT.ANN. art. 4477–7, § 6(a) (Vernon 1963) (repealed 1987); *now codified at* TEX.HEALTH & SAFETY CODE ANN. § 361.162 (Vernon 1990) (prohibiting a county from locating a facility within the territorial limits or extraterritorial jurisdiction of a municipality). Texoma Utility argues that the District Act controls over any inconsistent law dealing with the power and authority of Texoma Utility. Since we have held that the District Act and chapters 30 and 54 of the Texas Water Code do not grant Texoma Utility the authority to place a landfill within the city limits of the City of Bells, these other code provisions are not inconsistent with the District Act. *See also* TEX.REV.CIV.STAT.ANN. art. 4477–7, § 6 (Vernon 1963) (repealed 1987); *now codified at* TEX.HEALTH & SAFETY CODE ANN. § 361.165 (Vernon 1990) (making political subdivisions of the State which have jurisdiction of territory in more than one county subject to the same duties and limitations as a county under chapter 361).

structed to provide ... for the disposal of solid waste." However, the district's specifications do not apply to "area included at the time of promulgation within the corporate or extraterritorial boundaries of any incorporated municipality without the approval of the governing body of such municipality." This kind of restraint on Texoma Utility's authority to regulate within the city limits of a city supports our conclusion that it is without authority to locate a facility within Bells without the consent of Bells.

Texoma Utility propounds that Texas appellate and supreme court decisions have established the principle that a municipality, especially a general law city, cannot utilize its land use control authority in a way that frustrates special purpose political subdivisions from carrying out the purpose for which the political subdivision is created. Texoma Utility argues that this principle operates to prevent the application to Texoma Utility of any Bells ordinance that would prohibit use of the Grantham tract as a landfill. Texoma Utility relies on *City of Lucas v. North Texas Municipal Water Dist.*, 724 S.W.2d 811 (Tex.App.—Dallas 1986, writ ref'd n.r.e.), for this principle. In *City of Lucas*, the city sought a declaratory judgment and injunctive relief to prevent construction and operation of a wastewater treatment plant located primarily within the city's extraterritorial jurisdiction. The city argued that the water district had to get its consent before constructing the facility and that the district would have to comply with the city's ordinances relating to such a facility. *City of Lucas*, 724 S.W.2d at 815. *Lucas* stands for the proposition that a city can promulgate reasonable regulations governing the operation of a treatment plant for the health and welfare of the city's residents, but it cannot prohibit construction and operation of a treatment facility under the guise of health regulation. *Id.* at 816. *City of Lucas* was not present-

ed with and did not address the arguments made here under the Solid Waste Disposal Act. In *City of Lucas*, this court relied heavily on the act which created the North Texas Municipal Water District. Act of April 20, 1951, ch. 62, 1951 Tex.Gen.Laws 96, *amended by* Act of April 30, 1975, ch. 90 §§ 1, 27, 1975 Tex.Gen.Laws 238. We base our holding, however, on a more analogous case, *City of Plano v. City of Allen*, 395 S.W.2d 927 (Tex.Civ.App.—Dallas 1965, writ ref'd n.r.e.).[18] In *City of Plano*, we held that the legislature did not intend to authorize a city to own and operate a sewage disposal plant within the city limits of another city without that city's consent. *City of Plano*, 395 S.W.2d at 929. Our review of the District Act and chapters 30 and 54 of the Texas Water Code leads us to conclude that the legislature authorized Texoma Utility to purchase land outside the geographical boundaries of the district and place a landfill on that land but did not grant Texoma Utility the unilateral authority to place a landfill within the city limits of a nonmember city such as Bells.

Texoma Utility also claims that the Texas Supreme Court decision in *Austin Independent School District v. City of Sunset Valley*, 502 S.W.2d 670 (Tex.1973), supports its right to locate the landfill in Bells. In *Sunset Valley*, the city was located entirely within and serviced by the Austin Independent School District. The City of Sunset Valley passed an ordinance zoning the entire city residential. The school district sought to locate an auxiliary facility within the city limits of Sunset Valley. Such a facility was not permitted under the residential zoning ordinances of Sunset Valley, and the city refused to grant a variance or disannex the land. The school district sought a declaration that the zoning ordinances of the city were ineffective to prevent the school district from erecting the proposed facility. *City of Sunset Valley*, 502 S.W.2d at 671. The supreme court reasoned that although none of the statu-

18. *City of Lucas* distinguished our holding in *City of Plano* on the basis of certain language in the statute creating the North Texas Municipal Water District. That language stated that the water district could locate a facility inside or outside its boundaries, at any location whatsoever at the sole discretion of the district. No such language is contained in the District Act which created Texoma Utility.

tory provisions contained in the Texas Education Code expressly provided the school districts with power to select sites, that power was to be implied by sections 23.-26(a) and 23.31 of the Texas Education Code. *Id.* at 673.

*Sunset Valley* is distinguishable. First, no provision of the Texas Education Code authorizes a school district to place one of its facilities outside of its jurisdiction. Second, we do not find a provision that permits a city which comes upon an established school district by way of annexation to have a say in how the school is operated. Finally, Sunset Valley was located entirely within the jurisdiction of the Austin Independent School District and received the services of that district. In the case at bar, Texoma Utility is attempting to locate a landfill to service the needs of its member cities within the city limits of a non-member city. *City of Sunset Valley* does not establish any principle which would permit Texoma Utility, unilaterally, to locate its facility within the city limits of Bells. Points of error seventeen through nineteen are sustained.

In points of error ten through thirteen, Bells argues that Texoma Utility and Grantham are estopped from denying or have waived the right to deny the validity of the annexations or the land use ordinances. Since we have ruled on the validity of the annexations, we need not reach these points. As for the proposition that either Texoma Utility or Grantham are estopped from denying, or alternatively have waived the right to deny, the validity of the ordinances restricting the use of land within Bells, Bells cites no authority respecting these zoning ordinances. To the extent that points of error ten through thirteen claim that Texoma Utility and Grantham are estopped from contesting or have waived the right to contest the validity of the zoning ordinances, they are overruled.

In point of error twenty, Bells attacks the trial court's award of attorney fees. Because we are remanding this cause of action to the trial court, we sustain this point of error and remand the issue of attorney fees.

The judgment of the trial court that the Grantham tract was not annexed into Bells and that Bells did not have the authority to prevent Texoma Utility from placing a landfill within Bells is REVERSED. The cause is REMANDED to the trial court for proceedings not inconsistent with this opinion.

APPENDIX